29 A.3d 361 (2011)
422 N.J. Super. 467
PRINCETON HEALTHCARE SYSTEM, Plaintiff-Respondent,
v.
NETSMART NEW YORK, INC., Defendant-Appellant.
No. A-3533-10T4.
Superior Court of New Jersey, Appellate Division.
Argued September 26, 2011.
Decided October 21, 2011.
*362 Robert J. Donaher argued the cause for appellant (Walder, Hayden & Brogan, attorneys; Mr. Donaher, of counsel and on the briefs; Thomas J. Spies, Roseland, of counsel).
Patrick J. Dwyer argued the cause for respondent (Smith, Stratton, Wise, Heher & Brennan, attorneys; Mr. Dwyer and Thomas E. Hastings, of counsel and on the brief; William H. Hofmann, Princeton, on the brief).
Before Judges GRALL, ALVAREZ and SKILLMAN.
The opinion of the court was delivered by
SKILLMAN, J.A.D. (retired and temporarily assigned on recall).
This appeal requires us to consider the applicability of the Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -20, to a negotiated contract between corporations for the installation and implementation of a complex computer software system. We conclude that such a contract does not constitute a "sale of merchandise" as defined in the CFA and therefore cannot provide a basis for a CFA claim.

I.
Plaintiff Princeton Health Care System (PHCS) is a nonprofit corporation that provides healthcare services. Defendant Netsmart New York (Netsmart) is engaged in the business of providing computer software products and services to healthcare facilities.
Sometime in 2003, PHCS decided to upgrade the computer and medical billing system at Princeton House Behavioral Health Facility (Princeton House), which is a PHCS satellite facility that provides healthcare services to patients suffering from mental illnesses and addictions. On January 28, 2004, Princeton House distributed a request for proposals for what it described as a "Behavioral Health Information System" to companies that provide the products and services required for such an upgrade in its computer system. This request, which PHCS's computer consultant, ACS Consultants, assisted Princeton House in preparing, contained detailed specifications any proposal was required to meet and an outline of the criteria Princeton House would use in selecting a company for the project.
On February 25, 2004, Netsmart submitted a 149-page response to this request for proposals. Various other companies also submitted responses.
Princeton House subsequently engaged in a lengthy process of evaluation of these responses. During this process, representatives of Princeton House and Netsmart held meetings regarding Netsmart's proposal and representatives of Princeton House visited other healthcare facilities that use computer systems supplied by Netsmart. The parties also engaged in negotiations regarding the terms of a proposed contract, in which PHCS's computer consultant, ACS, and its legal counsel were active participants. In the course of those negotiations, the system Netsmart proposed was expanded to include a software application called eMar (Electronic Medication Administration Record), which was designed to allow nurses and other authorized staff to chart the administration of medication online.
*363 On December 21, 2006, nearly three years after Princeton House distributed the request for proposals to potential suppliers of an upgraded computer system for its facility, Princeton House selected Netsmart to provide this system. Consequently, Princeton House entered into a contract with Netsmart that spelled out Netsmart's obligations with respect to the installation of its Avatar computer system and integration of that system into the existing computer system at Princeton House and Princeton House's obligations to work with Netsmart in implementing and testing the system and training Princeton House employees in its use.
There were substantial delays in the implementation of the Netsmart system at the Princeton House facility. There are significant disagreements between the parties concerning responsibility for those delays.
The parties held a meeting on June 5, 2008 in an effort to resolve their differences and to move forward with performance under the contract, but Princeton House was not satisfied with Netsmart's responses to its concerns. Consequently, on July 8, 2008, Princeton House sent a letter to Netsmart stating that it "deemed Netsmart to be in default of its obligations" and terminating the contract.
Thereafter, PHCS brought this action against Netsmart. PHCS's complaint asserted claims for breach of contract; violation of the covenant of good faith and fair dealing; rescission based on Netsmart's alleged fraud in inducing Princeton House to enter into the contract; and violation of the CFA.
Shortly after filing its answer and a counterclaim, Netsmart filed a motion for summary judgment, which was supported by certifications and a substantial quantity of exhibits. PHCS submitted certifications and exhibits in opposition to the motion.
On October 29, 2010, the trial court issued an oral opinion and order denying Netsmart's motion "without prejudice."
However, Netsmart interpreted certain of the trial court's comments in denying its motion to dismiss PHCS's CFA claim as a dispositive ruling that PHCS had a viable CFA claim that it would be entitled to submit to the trier of fact, and sought clarification from the court. Specifically, Netsmart pointed to the court's statement that:
... [PHCS] is correct in pointing out that the services provided by [Netsmart] fall within the CFA's definition of goods and services as computer software and services. The computer software [Netsmart] sold to [PHCS] is available to the public at large and as a business entity the plaintiff is entitled to relief under the CFA if a jury were to determine such relief was appropriate.
The trial court agreed with Netsmart's interpretation of its original opinion and entered an amended order on December 6, 2010, which not only denied Netsmart's motion for summary judgment but also provided:
... Partial summary judgment is hereby granted to plaintiff on the issue of its standing to sue under the Consumer Fraud Act as well as on the Act's applicability to the commercial subject matter of this lawsuit. Said rulings are based on the Court's express finding that the goods in issue are marketed and sold to the general public, as set forth on the record on November 19, 2010 and October 29, 2010, and the reasons expressed by the Court on those dates.
Netsmart filed a motion for leave to appeal from this order, which we denied. Netsmart then filed a motion for leave to *364 appeal to the Supreme Court. The Court granted this motion and remanded the appeal to us "to consider on the merits."
Initially, we note that Netsmart's interlocutory appeal is limited to those parts of the December 6, 2010 order that denied its motion to dismiss PHCS's CFA claim and granted PHCS partial summary judgment on that claim.[1] Netsmart does not appeal from the denial without prejudice of its motion to dismiss PHCS's other claims.

II.
The primary operative section of the CFA provides in pertinent part:
The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice....
[N.J.S.A. 56:8-2.]
The CFA also provides that "[a]ny person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of any method, act or practice declared unlawful under [the CFA]" may bring a private cause of action for that alleged CFA violation. N.J.S.A. 56:8-19. A party who prevails in such an action is entitled to treble damages and reasonable attorneys fees. Ibid.
The CFA defines a "person" who may be a victim of a CFA violation as including "any natural person or his legal representative, partnership, corporation, company, trust, business entity or association, ..." N.J.S.A. 56:8-1(d). We have previously held that under this definition of "person," a corporation may maintain an action for a violation of the CFA. See, e.g., Coastal Grp., Inc. v. Dryvit Sys., Inc., 274 N.J.Super. 171, 179-80, 643 A.2d 649 (App.Div. 1994); Dreier Co. v. Unitronix Corp., 218 N.J.Super. 260, 272-73, 527 A.2d 875 (App. Div.1986); Hundred E. Credit Corp. v. Eric Schuster Corp., 212 N.J.Super. 350, 354-57, 515 A.2d 246 (App.Div.), certif. denied, 107 N.J. 60-61, 526 A.2d 146 (1986); D'Ercole Sales, Inc. v. Fruehauf Corp., 206 N.J.Super. 11, 23-24, 501 A.2d 990 (App. Div.1985). As we explained in Hundred E. Credit Corp., "[e]ven the most world-wise business entity can be inexperienced and uninformed in a given consumer transaction. Unlawful practices thus can victimize business entities as well as individual consumers." 212 N.J.Super. at 356-57, 515 A.2d 246.
*365 However, this does not mean that every contract entered into by a corporation may be the subject of a CFA claim. The CFA only applies to sales of "real estate," which is obviously not involved in this case, and "sales of merchandise." N.J.S.A. 56:8-2. The CFA defines "merchandise" as including "any objects, wares, goods, commodities, services or anything offered, directly or indirectly to the public for sale." N.J.S.A. 56:8-1(c) (emphasis added). We have previously indicated that "the public," as used in this definition of "merchandise," refers to "the public at large." Finderne Mgmt. Co. v. Barrett, 402 N.J.Super. 546, 570, 955 A.2d 940 (App.Div.2008); Marascio v. Campanella, 298 N.J.Super. 491, 499, 689 A.2d 852 (App.Div.1997); see also Kugler v. Romain, 58 N.J. 522, 536, 279 A.2d 640 (1971) (recognizing that the CFA is directed primarily at "deception, misrepresentation and unconscionable practices engaged in by professional sellers seeking mass distribution of many types of consumer goods"); 539 Absecon Boulevard, L.L.C. v. Shan Enters. Ltd. P'ship, 406 N.J.Super. 242, 273-80, 967 A.2d 845 (App.Div.) (same), certif. denied, 199 N.J. 541, 973 A.2d 945 (2009). Thus, "[i]t is the character of the transaction, not the identity of the purchaser, which determines whether the CFA is applicable." Finderne Mgmt. Co., supra, 402 N.J.Super. at 570, 955 A.2d 940; accord. Papergraphics Int'l, Inc. v. Correa, 389 N.J.Super. 8, 13, 910 A.2d 625 (App. Div.2006) ("CFA applicability hinges on the nature of the transaction, requiring a case by case analysis.")
The contract between Princeton House and Netsmart for the installation and implementation of a complex computer system at Princeton House did not constitute a simple purchase of computer software sold to the public at large. Compare Dreier Co., supra, 218 N.J.Super. at 273, 527 A.2d 875; Hundred E. Credit Corp., supra, 212 N.J.Super. at 353-57, 515 A.2d 246. The contract resulted from a request for proposals for an upgrade in Princeton House's computer system, which Princeton House prepared with the assistance of PHCS's computer consultant. After Princeton House received Netsmart's response to this request, it engaged in a more than two-year process of evaluation of proposals, which involved visiting other healthcare facilities that were already using computer systems similar to the one Netsmart proposed to install at Princeton House. The contract did not provide for simply the installation of a standardized computer software program but rather the design of a custom-made program to satisfy Princeton House's unique needs and Netsmart's active participation in implementation of this program. Moreover, before agreeing to award the contract to Netsmart, Princeton House, with the assistance of PHCS's computer consultant and legal counsel, engaged in lengthy negotiations over its terms with Netsmart. This kind of heavily negotiated contract between two sophisticated corporate entities does not constitute a "sale of merchandise" within the intent of the CFA. See Finderne Mgmt. Co., supra, 402 N.J.Super. at 570-73, 955 A.2d 940.
Accordingly, we reverse the parts of the December 6, 2010 order that granted partial summary judgment to PHCS and denied Netsmart's motion to dismiss PHCS's consumer fraud claim and remand the case to the trial court for further proceedings on the other counts of PHCS's complaint and on Netsmart's counterclaim.
NOTES
[1] PHCS has filed a motion to strike Netsmart's reply brief supported by a brief which argues that Netsmart's motions for leave to appeal related solely to the part of the December 6, 2010 order that granted PHCS's partial summary judgment and did not encompass the part of that order that denied Netsmart's motion to dismiss PHCS's CFA claim. However, Netsmart's motions expressly stated that Netsmart was seeking leave to appeal from the part of the December 6, 2010 order "denying [Netsmart's] motion for summary judgment on the issue" of PHCS's "standing to sue under [the CFA]," and Netsmart argued in its brief in support of the motions that "controlling New Jersey appellate law . . . warranted dismissal of [PHCS's] CFA claims." Therefore, we are satisfied that the interlocutory appeal the Supreme Court granted Netsmart leave to pursue includes the part of the December 6, 2010 order that denied Netsmart's motion to dismiss PHCS's CFA claim. Simultaneously with the filing of this opinion, we are filing an order denying PHCS's motion to strike Netsmart's reply brief.