JUSTICE LaVECCHIA delivered the opinion of the Court.
**434 New Jersey's Consumer Fraud Act (CFA or the Act), N.J.S.A. 56:8-1 to -210, is a powerful "legislative broadside against unsavory commercial practices" in the marketplace. Real v. Radir Wheels, Inc., 198 N.J. 511, 514, 969 A.2d 1069 (2009). When initially enacted, the CFA addressed the elimination of sharp practices and dealings in the marketing of merchandise. Cox v. Sears Roebuck & Co., 138 N.J. 2, 16, 647 A.2d 454 (1994). Continuously expanded by the Legislature over the years, the CFA's reach now extends beyond "fast-talking and deceptive merchant[s]" to protect the public even when a merchant acts in good faith. Ibid. (alteration in original) (quoting D'Ercole Sales, Inc. v. Fruehauf Corp., 206 N.J. Super. 11, 23, 501 A.2d 990 (App. Div. 1985) ). In light of the CFA's remedial purpose, courts liberally enforce the Act to fulfill its objective to protect consumers from prohibited unconscionable acts by sellers. Furst v. Einstein Moomjy, Inc., 182 N.J. 1, 11-12, 860 A.2d 435 (2004).
In this appeal, where plaintiffs, an individual and his limited liability towing company, entered into a contract for the purchase of a customized medium-duty 4x4 truck with autoloader tow unit, we are called on to determine whether the CFA covers the transaction as a sale of "merchandise." The trial court answered that question in the negative and granted summary judgment to defendants on that basis. The Appellate Division disagreed and reversed.
For the reasons expressed herein, we agree with the Appellate Division that the trial court took too narrow an approach in assessing what constitutes "merchandise" under the remedial CFA. The customized *401 tow truck and rig fit within the CFA's expansive definition of "merchandise" and, therefore, plaintiff's CFA claim should not have foundered based on an application of that term. We further agree with the appellate panel's remand to the trial court for a determination of whether defendants' other bases for seeking summary judgment are meritorious. That assessment **435 of the summary judgment record is best made by the trial court in this instance, not by an appellate body.
I.
A.
This appeal arises from defendants' motion for summary judgment. Therefore, just as Rule 4:46-2 requires of a trial court, on appeal we view all facts related to the application of the term "merchandise" in the light most favorable to the non-moving parties, plaintiffs. See Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523, 666 A.2d 146 (1995). The following facts come from deposition testimony of plaintiff, Chayim Goodman, except where otherwise noted.
Goodman is the sole owner of plaintiff, All the Way Towing, LLC (ATW) (Goodman and ATW collectively, plaintiffs). Goodman formed ATW in 2005. During the time relevant to this matter, ATW employed only one person in addition to Goodman and operated three tow vehicles.
In or around November 2010, plaintiffs sought to purchase a medium-duty tow truck with all-wheel drive because ATW was interested in securing a contract that required medium-duty towing capability. After conducting research on the internet, Goodman found the website for Navistar, which manufactures "International" brand trucks. In the summary judgment motion filings, defendants and plaintiffs agreed that defendant, Bucks County International, Inc. (BCI), which is in the business of truck sales, parts sales, and service, sells exclusively the "International" brand trucks that Goodman was interested in purchasing.
Goodman testified that he also conducted research on the website of co-defendant Dynamic Towing Equipment and Manufacturing, Inc. (Dynamic). A representative from Dynamic testified that Dynamic manufactures only towing mechanisms that mount onto truck cabs and chassis; it does not manufacture cabs or chassis. Goodman stated that he decided to purchase an "International"
**436 brand truck from BCI with an installed Dynamic 801 model autoloader tow body. Plaintiffs' information about Dynamic's autoloader tow body came from Dynamic's website brochure.
Following his online research, Goodman contacted a salesman at BCI, Herb Krewson, and informed Krewson that he was interested in an "International" brand all-wheel drive truck and that he wanted a Dynamic 801 model autoloader tow body installed onto the truck so that he could perform medium-duty towing work. Krewson told Goodman that Krewson had never dealt with Dynamic before.
Goodman testified that he and Krewson spent "a couple of months" negotiating options and pricing. BCI and ATW signed a ten-page contract,[1] dated February 3, 2011. The contract between BCI and ATW contains a list of specifications, which were to be included in the truck chassis prepared at the Navistar factory, and included the cost of attaching a Dynamic 801 rig model to the truck. Goodman testified that he was aware that the truck was to be custom-built according to his requested specifications. According to the contract, *402 the overall estimated cost of the outfitted truck was $166,089.27 and included the necessary modifications to the truck and the Dynamic 801 towing rig. During his deposition, Krewson confirmed that ATW paid BCI a $10,000 deposit.
Krewson informed Goodman that after BCI delivered the truck to Dynamic, Dynamic discovered that its tow body was incompatible with the truck, prompting Dynamic to make modifications to the towing unit. Goodman testified that defendants attempted to deliver the truck with the tow rig to ATW on four occasions during October and November 2011. Each time, ATW identified deficiencies with the truck and/or the towing rig, including "spew[ing] hydraulic fluid," "metal falling out[,] and the wheel lift [of the tow rig] not closing properly." In his testimony, Goodman conceded that when he test drove the truck, "it drove all right" but noted that the tow rig failed to function correctly. After the **437 fourth attempted delivery, Goodman told Krewson that ATW rejected the truck and wanted a refund of ATW's deposit. Goodman does not recall contacting Dynamic directly about the truck's rejection.
When BCI refused to return ATW's $10,000 deposit, plaintiffs commenced this action that includes the CFA claim.
B.
The trial court dismissed the CFA count on defendants' motion for summary judgment. For the trial court, the issue was the CFA's definition of "merchandise," which, the court emphasized, refers to products being offered to the public. The court stated that the tow truck "was a specially designed product that was the subject of negotiations." The court determined that the truck's custom design was "a critical issue" that caused the product not to fit within the definition of merchandise, and thus, the CFA did not apply. The court did not address whether, if the product had fit within that definition, plaintiffs provided sufficient evidence to survive defendants' summary judgment motion regarding the CFA.
The Appellate Division reversed. All the Way Towing, LLC v. Bucks Cty. Int'l, Inc., 452 N.J. Super. 565, 178 A.3d 97 (App. Div. 2018). The panel began by noting that the trial court "held that the transaction was not a 'sale of merchandise' ... because the tow truck was not something available 'to the public for sale.' " Id. at 570, 178 A.3d 97. Citing cases where "custom-built item[s] may constitute a 'sale of merchandise,' " id. at 572, 178 A.3d 97, the panel rejected the trial court's conclusion as too summary, noting that availability to the public goes more to the complexity of the good rather than the uniqueness of design, id. at 571-72, 178 A.3d 97. In the panel's view, the customized truck with towing rig involved here met the definition of merchandise under the CFA. Id. at 570-71, 178 A.3d 97. In reaching its holding, the Appellate Division distinguished two prior Appellate Division cases cited by defendants and plaintiffs -- **438 Princeton Healthcare System v. Netsmart New York, Inc., 422 N.J. Super. 467, 29 A.3d 361 (App. Div. 2011), and Finderne Management Co., Inc. v. Barrett, 402 N.J. Super. 546, 955 A.2d 940 (App. Div. 2008) -- where products were determined not to be a "sale of merchandise" because "the goods and services sold there were 'complex.' " Ibid. Finally, because the trial court did not reach the issue, the panel declined to determine whether plaintiffs had established the elements of a CFA claim and could therefore survive summary judgment, instead remanding the case for the trial court to make that determination first. Id. at 572 n.6, 178 A.3d 97. *403 This Court granted defendants' petitions for certification, but we limited the issues to "whether the [CFA] is applicable to this sale of a custom-built tow truck and whether the Appellate Division erred by failing to address whether plaintiff established the elements of a claim under the [CFA]." 233 N.J. 304, 184 A.3d 910 (2018) ; 233 N.J. 323, 184 A.3d 921 (2018). We also granted New Jersey Association for Justice's (NJAJ) motion for leave to appear as amicus curiae.
II.
A.
1.
Dynamic's argument emphasizes that the purpose of the CFA is to protect consumers from deceptive business practices that injure the public at large and, therefore, not all transactions are covered by the Act. Whether the CFA applies depends on the nature of the transaction and whether the goods at issue were "offered" "to the public for sale" as stated in N.J.S.A. 56:8-1(c). Further, according to Dynamic, the Appellate Division misinterpreted Finderne and Princeton Healthcare by suggesting that the holdings rested on the complexity of the goods rather than the level of sophistication between the companies and the length of negotiations between the parties.
**439 Dynamic's argument is essentially that the CFA does not apply to transactions concerning custom-made goods designed specifically to meet the purchaser's particular needs. To determine whether a product constitutes merchandise available "to the public for sale" in a setting such as here, Dynamic suggested that the Court adopt a fact-sensitive test. Focusing on the facts that it urges as pivotal in such an analysis, Dynamic asserts that the "International" brand truck with the Dynamic 801 model tow rig was not advertised or offered by Dynamic to anyone, especially not to the general public. Dynamic also emphasizes that BCI and ATW had months-long negotiations and that ATW is sophisticated and experienced within the towing industry.
2.
Petitioning separately, BCI similarly asserts that the tow truck was not available to the public for sale and that the Appellate Division erred in interpreting Finderne and Princeton Healthcare as focusing on complexity. BCI asserts that the CFA has limited application in a commercial setting. Relying on Princeton Healthcare in particular, BCI argues that a months-long negotiated contract between sophisticated corporate entities does not fall within the CFA.
BCI further argues that the Appellate Division should have reviewed whether plaintiffs satisfied the elements of a CFA claim. In the event that this Court determines that the transaction fits within the CFA's definition of "merchandise," BCI asks us to dismiss plaintiff's claim on the basis that plaintiffs have not established all essential elements of a CFA cause of action.
B.
Plaintiffs maintain that the CFA is remedial legislation to be construed broadly to protect consumers. They assert that case law recognizes that the CFA applies to custom-made products and that it has been applied to commercial transactions involving goods and services not mass marketed to the public. Their arguments **440 rely on the broad terms used in the CFA's definition of "merchandise."
Plaintiffs distinguish Finderne and Princeton Healthcare on the bases that *404 they involved a series of complex financial transactions and specially designed in-house software programming, and the transactions necessitated assistance and advice from attorneys and consultants. In contrast, in this transaction, no lawyers or intermediaries were involved; plaintiffs dealt directly with defendants. Plaintiffs further argue that modifying a product, or having a term sheet listing specifications, does not remove a transaction from the CFA's purview.
Plaintiffs maintain that although few members of the public may have an interest in purchasing a medium-duty tow truck, anyone can purchase this tow truck. They contend that the tow truck was not a complex product because the specifications in the contract, although numerous, are similar to specifications required for purchasing a consumer automobile. Finally, plaintiffs assert that being knowledgeable about the tow truck business does not make plaintiffs sophisticated or knowledgeable about the manufacturing of tow trucks.
Amicus curiae NJAJ supports plaintiffs. NJAJ notes that courts interpret the CFA broadly to protect consumers and that the CFA applies to transactions between businesses, pointing to the plain language of the CFA's definition of "person." NJAJ argues that the CFA's definition of merchandise is not limited to "off the rack" goods and analogizes the purchase of the tow truck to that of a typical passenger vehicle that involves many customizing specifications determined by the purchaser.
III.
The issue in this appeal is whether the customized tow truck in this transaction fits within the CFA's definition of "merchandise" in N.J.S.A. 56:8-1(c). Appellate review of this issue involving statutory construction is de novo.
**441 Cashin v. Bello, 223 N.J. 328, 335, 123 A.3d 1042 (2015) (citing Perez v. Zagami, LLC, 218 N.J. 202, 209, 94 A.3d 869 (2014) ).
Our interpretive task begins with a review of the statute's plain language, DiProspero v. Penn, 183 N.J. 477, 493, 874 A.2d 1039 (2005) (citing Miah v. Ahmed, 179 N.J. 511, 520, 846 A.2d 1244 (2004) ), because it is the "best indicator" of legislative intent, id. at 492, 874 A.2d 1039.
The CFA provides that
[t]he act, use or employment by any person of any unconscionable commercial practice, deception, [or] fraud, ... in connection with the sale or advertisement of any merchandise..., whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice[.]
[ N.J.S.A. 56:8-2 (emphasis added).]
Our inquiry centers on the meaning of the term "merchandise," which the CFA defines.
The term "merchandise" shall include any objects, wares, goods, commodities, services or anything offered, directly or indirectly to the public for sale[.]
[ N.J.S.A. 56:8-1(c).]
The Legislature amended the definition of "merchandise" in 1967 to read as it presently does. L. 1967, c. 301, § 1 (adding the language "or anything offered, directly or indirectly to the public for sale"). Prior to that amendment, the CFA defined "merchandise" as "any objects, wares, goods, commodities or services." L. 1960, c. 39, § 1. We view the amending language as merely adding more of the same to the definition's original thrust which was always concerned with items offered to the public for sale.
When originally enacted, the CFA outlawed use of "fraudulent practices in the *405 marketplace" to deter sharp practices and dealings in the marketing of merchandise. Furst, 182 N.J. at 11, 860 A.2d 435 (citing Cox, 138 N.J. at 21, 647 A.2d 454 ). The Act's focus, thus, was on State enforcement and regulation of activities by merchants interacting with the public. It seems apparent that the initial wording of the "merchandise" definition enumerated categories of items capable of being marketed to the public and about which the consuming public could be defrauded or deceived. **442 We give words their plain meaning and apply the statutory language sensibly. Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 553, 964 A.2d 741 (2009). The 1967 amendment adding to the definition of merchandise was plainly consistent with the earlier language. Protection of the consuming public from fraud and deception by merchants, advertisers, and their like remained the CFA's focus in 1967. The new language simply expanded the definition of merchandise by adding to the classes of items previously listed "anything" that is offered to the public for sale through indirect as well as direct means. The parties' arguments seemingly acknowledge that to be protected by the CFA, merchandise must be offered to the public for sale, so we need not belabor the point.
The CFA's history has been "one of constant expansion of consumer protection." Gennari v. Weichert Co. Realtors, 148 N.J. 582, 604, 691 A.2d 350 (1997). The CFA's reach presently protects the public even when a merchant acts in good faith. Cox, 138 N.J. at 16, 647 A.2d 454. In 1971, the Attorney General's powers, which already included the power to prosecute and to regulate fraudulent and unlawful activities under the CFA, were broadened; the prohibition against unconscionable commercial practices was added; and the Act began to allow for private causes of action. Cox, 138 N.J. at 15, 647 A.2d 454.
In light of the Act's original remedial purpose and its subsequent and continuous expansion by the Legislature, courts have consistently recognized that the CFA must be liberally construed. Furst, 182 N.J. at 11-12, 860 A.2d 435 (citing Cox, 138 N.J. at 15-16, 647 A.2d 454 ) ("The [CFA] is remedial legislation that we construe liberally to accomplish its broad purpose of safeguarding the public."). Thus, it is with such an eye that we turn to examine the transaction at issue to determine whether the custom-built tow truck with a rig is the type of merchandise offered to the public that the CFA means to cover.
We do so against a backdrop of decided cases that have touched on the definition of merchandise and the import of "offered to the **443 public for sale" as applied in various factual settings. We address the cases that are most pertinent to our inquiry.
IV.
A.
First, it is well established that the CFA is applicable to commercial transactions. See, e.g., Coastal Grp., Inc. v. Dryvit Sys., Inc., 274 N.J. Super. 171, 175, 179-80, 643 A.2d 649 (App. Div. 1994) (holding that trial court erred when it dismissed CFA claim on the ground that "one commercial entity may not recover in tort for economic losses allegedly caused by a product purchased from another commercial entity"); Hundred E. Credit Corp. v. Eric Schuster Corp., 212 N.J. Super. 350, 355, 515 A.2d 246 (App. Div. 1986) (same); D'Ercole Sales, 206 N.J. Super. at 23, 501 A.2d 990 (same). Indeed, as the amicus rightfully points out, the definition of "person" includes business entities such as a "partnership, corporation, company ..., business entity or association," N.J.S.A. 56:8-1(d), *406 and the word "person," as used in N.J.S.A. 56:8-2, refers to not only the person who engages in an unconscionable commercial practice, fraud, or deception, but also the person who is the victim of such practice, N.J.S.A. 56:8-2 (referencing practice as unlawful "whether or not any person has in fact been misled, deceived or damaged thereby").
Plainly, however, context is important. We do not suggest that all business-to-business transactions automatically fit the intendment of a sale offered to the public. Here we need not plumb such limits because plaintiffs, as interested members of the public, were purchasing the tow truck with rig for their own use. It is not disqualifying that their use was that of a small business desirous of being able to engage in a wider range of towing activity. The nub of the issue here focuses on the good in question.
Second, as did the appellate panel that considered this matter, we note that several cases have already recognized that the CFA may apply to custom-made goods. Although the principle can trace **444 back to the customized goods and services at issue in Cox, in Czar, Inc. v. Heath, this Court more recently was called on to determine "whether a contractor hired by a homeowner to design and install a kitchen," including building and installing custom kitchen cabinets, was subject to the CFA. 198 N.J. 195, 197, 966 A.2d 1008 (2009). The plaintiff in Heath"argue[d] that the CFA ... [does] not afford defendants a remedy because plaintiff's work was part of the building of defendants' new home" and thus the claim was subsumed by a separate cause of action. Id. at 200, 966 A.2d 1008. That was not a winning argument. This Court ultimately determined that the CFA can apply to the building and installation of custom kitchen cabinets. Id. at 209-10, 966 A.2d 1008.
Consistent with this Court's reasoning, the Appellate Division similarly has rejected arguments premised on customization of an item, which have been asserted to remove a transaction from the CFA's reach.
In Sprenger v. Trout, the plaintiffs asserted a CFA claim related to the defendants' custom auto repair work. 375 N.J. Super. 120, 128, 866 A.2d 1035 (App. Div. 2005). The defendants argued that because the vehicle was not subject to motor vehicle registration requirements, the CFA and automotive repair regulations did not apply to the customized labor. Id. at 128-29, 866 A.2d 1035. The court disagreed and held that the "business of customizing and refabricating automobiles falls within the provisions of the CFA." Id. at 134, 866 A.2d 1035 ; cf. D'Ercole Sales, Inc., 206 N.J. Super. at 15, 31, 501 A.2d 990 (involving custom-built tow truck where, ultimately, the court determined the CFA did not apply based not on the customization but on the plaintiff's failure to demonstrate "unconscionable commercial practice"). Similarly, in Perth Amboy Iron Works, Inc. v. American Home Assurance Co., the plaintiffs ordered a yacht manufactured by the defendant but with a custom modification to the engine. 226 N.J. Super. 200, 204-05, 543 A.2d 1020 (App. Div. 1988), aff'd, 118 N.J. 249, 571 A.2d 294 (1990). The defendant company that sold the yacht was not the company that constructed the engine. Id. at 205, 543 A.2d 1020. In **445 a footnote, the panel stated that "[t]he trial judge apparently rejected the consumer fraud claim ... because the sale of the ... engines ... was not a 'mass distribution' problem .... That determination is too restrictive a reading of [the case law]." Id. at 207 n.5, 543 A.2d 1020. The panel's holding incorporated a conclusion that the CFA applied to the transaction. Id. at 211, 543 A.2d 1020. *407 Thus, neither the commercial setting of a transaction nor a customization of an item removes a transaction from the CFA's reach. However, a more nuanced assessment can be required to determine whether a transaction, good, or service is of the type offered to the public, bringing it within the CFA.
For that reason, the defendants rely heavily on Finderne and Princeton Healthcare to support their contention that the CFA should not apply in this case. We review them next.
B.
In Finderne, the plaintiffs' CFA claim involved its participation, at defendants' recommendation, in "a tax-deductible vehicle to fund pre-retirement death benefits for owner-employees." 402 N.J. Super. at 553, 955 A.2d 940. Although defendants asserted a number of bases for finding the CFA inapplicable in their business-to-business transaction, the Appellate Division "reject[ed] defendants' suggestion that because a corporation participated in [the transaction], the CFA does not apply." Id. at 569, 955 A.2d 940. The court noted that it is the "character of the transaction, not the identity of the purchaser, which determines whether the CFA is applicable." Id. at 570, 955 A.2d 940. The court did ultimately hold that the CFA was inapplicable but cited a number of fact-specific reasons. Id. at 554-57, 571-73, 955 A.2d 940. First, the court stated that the contract included a "sixty-page disclosure document" and recommendations to consult tax attorneys. Id. at 571-72, 955 A.2d 940. Additionally, the court determined that rather than one transaction, it was a series of "very complex" transactions, which took place over the course of years. Id. at 554-57, 571, 955 A.2d 940. The court observed that the plaintiffs were **446 not "unsophisticated buyers" but rather were informed through advice from an accountant and an attorney. Id. at 571-72, 955 A.2d 940. Viewed in its entirety, the court held that the transaction did not fit within the CFA because the service was not "of the type sold to the general public." Id. at 570, 572-73, 955 A.2d 940.
The transaction in Princeton Healthcare began with the plaintiff, a hospital and healthcare provider, distributing a request for proposals to upgrade their complex computer software system. 422 N.J. Super. at 469, 29 A.3d 361. The defendant "submitted a 149-page response to this request" and, after a "lengthy process of evaluation" and negotiations, which included "[the plaintiff's] computer consultant, ... and its legal counsel," the parties entered into an agreement. Id. at 469-70, 29 A.3d 361. The Appellate Division explained in its decision that " 'the public,' as used in [the] definition of 'merchandise,' refers to 'the public at large.' " Id. at 473, 29 A.3d 361 (citing Finderne, 402 N.J. Super. at 570, 955 A.2d 940 ). The panel reasoned that the transaction at issue was not protected under the CFA because it "did not constitute a simple purchase of computer software sold to the public at large." Id. at 473, 29 A.3d 361. The court noted that the transaction began with "a request for proposals" followed by "a more than two-year process of evaluation" and negotiation and that the contract provided for "the design of a custom-made program to satisfy [plaintiff's] unique needs." Id. at 473-74, 29 A.3d 361. The panel concluded that "[t]his kind of heavily negotiated contract between two sophisticated corporate entities does not constitute a 'sale of merchandise' within the intent of the CFA." Id. at 474, 29 A.3d 361 (citing Finderne, 402 N.J. Super. at 570-73, 955 A.2d 940 ).
As Finderne and Princeton Healthcare demonstrate, courts have examined with care the nature of the transaction when *408 customized products and commercial entities are involved in a private individual CFA claim.
C.
In our examination of the matter at hand, the applicability of the CFA does not turn on whether the public at large purchases **447 International trucks onto which a Dynamic 801 tow unit is installed. What is relevant is that a member of the public could, if inclined, purchase an operational tow truck consisting of a Dynamic 801 tow body installed onto an International chassis. It is consistent with the intent of the CFA to protect consumers regardless of the popularity of the product or service sold or advertised. To promote consistency in the application of the requirement that a product be offered to the public when evaluating a private individual CFA action, we hold that the availability requirement can be met by showing that any member of the public could purchase the product or service, if willing and able, regardless of whether such a purchase is popular.
We reject defendants' characterization of Princeton Healthcare and Finderne as having placed "limitations on the application of the [CFA] in business-to-business transactions." The transactions at issue in those cases were between two businesses; however, it was the nature of the transaction between the two business entities that precluded CFA protection. See Princeton Healthcare, 422 N.J. Super. at 473-74, 29 A.3d 361 ; Finderne, 402 N.J. Super. at 570-73, 955 A.2d 940. Moreover, defendants conflate "complexity" with "customization." A product or service can be customized without being "complex."
In business-to-business transactions it is the "nature of the transaction" that will determine whether it can fit within the CFA's definition of "merchandise." See D'Agostino v. Maldonado, 216 N.J. 168, 187, 78 A.3d 527 (2013). To promote consistency in assessing the nature of a transaction in a business-to-business setting for purposes of determining whether the CFA will apply to the merchandise, we adopt the following considerations for use by the courts: (1) the complexity of the transaction, taking into account any negotiation, bidding, or request for proposals process; (2) the identity and sophistication of the parties, which includes whether the parties received legal or expert assistance in the development or execution of the transaction; (3) the nature of the relationship between the parties and whether there was any **448 relevant underlying understanding or prior transactions between the parties; and, as previously noted; (4) the public availability of the subject merchandise.
Applying those principles in the instant matter, we hold that the customization of the tow truck with rig does not remove the product from the CFA's definition of "merchandise." Simply because identically customized tow trucks are not typically sold to the "public at large" does not mean the trucks are not offered "to the public for sale." Here it was a direct consumer purchase transaction; no attorneys or other experts were involved. Similarly, it is irrelevant that the "public at large" does not purchase International trucks onto which a Dynamic 801 tow unit is installed. The relevant point is that a member of the public so inclined could purchase an operational tow truck consisting of a Dynamic 801 tow body installed onto an International chassis. It is consistent with the remedial purposes of the CFA to protect consumers regardless of the popularity of the product or service sold or advertised.
In conclusion, we agree with the holding of the Appellate Division that reversed the *409 grant of summary judgment to defendants on the basis that this transaction did not satisfy the definition of "merchandise" under the CFA. We further agree with the judgment of the Appellate Division that remanded this matter to the trial court for consideration of the remaining summary judgment arguments advanced by defendants.
V.
The judgment of the Appellate Division is affirmed and the matter is remanded to the trial court for further proceedings.
CHIEF JUSTICE RABNER and JUSTICES PATTERSON, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in JUSTICE LaVECCHIA's opinion. Justice ALBIN did not participate.

Dynamic is not a party to the signed contract.