**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-2987
_____

UNIMED INTERNATIONAL INC.,
Appellant

v.

FOX NEWS NETWORK, LLC
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2:20-cv-17335)
District Judge: Honorable Evelyn Padin
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
October 20, 2025

Before: HARDIMAN, FREEMAN, and CHUNG, *Circuit Judges*.

(Filed: November 13, 2025)
_____

OPINION[*]
_____

HARDIMAN, *Circuit Judge*.

Unimed International appeals the District Court's summary judgment for Fox

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

News Network. We will affirm.

I

Unimed sells skincare products under various brand names, including Genucel. In late 2015, Unimed began building an advertising campaign for its Genucel products. So it retained Synergixx LLC, an advertising agency, to create television ads and purchase spots for them on Fox News. Synergixx in turn retained More Media Direct, Inc., a media-buying agency with experience buying ad spots from Fox.

The Genucel ads ran on Fox News from March 2016 to March 2017. During that period, Fox sent either weekly or monthly invoices to More Media, who then invoiced Synergixx, who in turn invoiced Unimed. Unimed says that it paid every invoice—about $3.2 million in total—through March 2017. More Media, however, fell significantly behind on its payments to Fox for Unimed's (and other clients') ads.

As Unimed later learned, More Media had been making bulk payments to Fox in round numbers like $100,000 on behalf of multiple clients, often with little to no instruction about how Fox should credit that money among More Media's various clients. By the time Unimed's payments to Synergixx passed to More Media and then Fox, the money often was no longer earmarked for Genucel ads. As a result of this bulk-payment practice, Unimed postulates, Fox must have unknowingly credited some of Unimed's money to other advertisers.[1]

_____

[1] Fox says the real reason that the money Unimed paid Synergixx wasn't ultimately applied to Genucel invoices is that Synergixx was embezzling that money. Unimed sued Synergixx for that alleged embezzlement in 2019 and then settled, but it now disputes

Because of the delinquencies, Fox placed a credit hold on Unimed's account in late March 2017. When Unimed learned that its Genucel ads were no longer running, it withheld payment for the final batch of ads Fox had aired. Unimed then tried to reconcile with Fox and get its ads back on the network. But Fox refused unless Unimed began to pay all delinquent invoices for Genucel ads. Unimed was willing to pay for the final batch of its ads but wouldn't assume responsibility for the rest of the outstanding invoices, which it believed were owed by either Synergixx or More Media. So Unimed's Genucel ad campaign never returned to Fox News.

Unimed sued Fox in 2020. It alleged that Fox's failure to obtain clear instructions from More Media about which invoices the bulk payments should be credited against constituted, among other things, negligence, tortious interference with prospective economic advantage, and an unconscionable commercial practice under the New Jersey Consumer Fraud Act. Fox counterclaimed for breach of contract and unjust enrichment seeking the total amount due in unpaid Genucel invoices. After discovery and upon the parties' cross-motions, the District Court entered summary judgment for Fox on all of Unimed's claims and on Fox's counterclaim for unjust enrichment. Unimed filed this timely appeal.

II

The District Court had jurisdiction under 28 U.S.C. § 1332. We have jurisdiction under 28 U.S.C. § 1291. We review summary judgment de novo, *Sapa Extrusions, Inc. v.*

_____

that Synergixx embezzled any money. The District Court didn't address this factual dispute, and we won't either because Unimed's claims fail in any event.

*Liberty Mut. Ins.*, 939 F.3d 243, 249 (3d Cir. 2019), and we "may affirm on any ground supported by the record," *Hassen v. Gov't of Virgin Islands*, 861 F.3d 108, 114 (3d Cir. 2017) (citation modified). The parties agree that New Jersey law governs.

III

A

We begin with Unimed's negligence and tortious-interference claims. We agree with the District Court that summary judgment for Fox is warranted, though our decision is based on a slightly different ground than the ones stated in the District Court's thorough and cogent opinion.

Unimed's two tort claims fail because each seeks recovery for harm caused by Fox's refusal to continue doing business with Unimed. Unimed's Complaint requests "compensatory damages reflecting all lost profits to Unimed due to Fox News's unjustified blackout of Unimed advertising." App. 300. But under New Jersey law, "[t]he motives which actuate a man in refraining from making a contract . . . are absolutely beyond all inquiry or challenge." *Rothermel v. Int'l Paper Co.*, 394 A.2d 860, 864 (N.J. Super. Ct. App. Div. 1978) (citation modified). So a party who causes "harm to another merely by refusing to enter into a business relation with the other or to continue a business relation terminable at his will is not liable for that harm." *Id.* at 865 (quoting Restatement (First) of Torts, § 762 (1939)); *accord Levin v. Kuhn Loeb & Co.*, 417 A.2d 79, 87 (N.J. Super. Ct. App. Div. 1980). Fox was thus privileged to stop selling ad spots to Unimed for any reason not otherwise unlawful. And Fox's mistaken belief that Unimed had underpaid in the past is not an unlawful reason to stop selling to it, even if

4

Fox had that mistaken belief because of its negligent accounting practices.[2] Any duty Unimed claims Fox had to continue selling to it sounds in contract, and Unimed brought no breach-of-contract claim here.

Unimed counters that this case is like *Sons of Thunder, Inc. v. Borden, Inc.*, 690 A.2d 575 (N.J. 1997). In that case, the Supreme Court of New Jersey held that a contracting party's bad-faith performance was not excused just because the contract was terminable at will. *Id.* at 588–89. But that holding turned on the implied covenant of good faith and fair dealing, a rule of contract law that requires parties to perform all their contractual obligations in good faith. *Id.* at 587. That rule has no bearing on Unimed's tort claims.

## B

Unimed's claim under the New Jersey Consumer Fraud Act also fails, essentially for the reasons stated by the District Court. The Act prohibits unconscionable commercial practices "in connection with the sale . . . of any merchandise." N.J. Stat. Ann. § 56:8-2. "The term 'merchandise' . . . include[s] any objects, wares, goods, commodities, services or anything offered, directly or indirectly to the public for sale." *Id.* § 56:8-1(c). Unimed's purchases of ad spots from Fox were "business-to-business transaction[s]," so we must assess the four factors set out in *All the Way Towing, LLC v. Bucks Cnty. Int'l, Inc.*, 200 A.3d 398, 408 (N.J. 2019), to determine whether Fox's ad spots are "merchandise," such that NJCFA applies. Those factors are:

---

[2] Judge Chung would conclude that Fox owed no duty of care to Unimed in apportioning More Media's payments

> (1) the complexity of the transaction, taking into account any negotiation, bidding, or request for proposals process; (2) the identity and sophistication of the parties, which includes whether the parties received legal or expert assistance in the development or execution of the transaction; (3) the nature of the relationship between the parties and whether there was any relevant underlying understanding or prior transactions between the parties; and . . . (4) the public availability of the subject merchandise.

*Id.*

The first three factors here strongly suggest that Fox did not offer ad spots to the public. The ad-spot purchases were complicated transactions involving several steps including rate negotiations. And all parties—including the two intermediaries who facilitated the purchases—were sophisticated commercial entities who repeatedly transacted for a year. On the fourth factor, Unimed supplied evidence showing that anyone who wishes may submit an advertising inquiry on Fox's website. There's no evidence, however, that Fox actually sells ad spots to anyone other than businesses who—either themselves or through buying agents—could navigate the complexities of these transactions. So Unimed's minimal evidence supporting just one of the four *All the Way Towing* factors is insufficient to withstand summary judgment.

IV

We turn finally to Fox's unjust-enrichment counterclaim. The District Court entered summary judgment for Fox because Unimed repeatedly acknowledged that it never paid for the last batch of Genucel ads that Fox ran. *See Iliadis v. Wal-Mart Stores, Inc.*, 922 A.2d 710, 723 (N.J. 2007) (setting out the basic elements of an unjust-enrichment claim). On appeal, Unimed does not deny that it never paid for those ads. Nor does Unimed dispute that its failure to pay satisfies the basic elements of unjust

6

enrichment. Unimed instead contends that Fox cannot recover because it has unclean hands. *See Dobco, Inc. v. Bergen Cnty. Improvement Auth.*, 273 A.3d 406, 408 (2022) ("[A] suitor in equity must come into court with clean hands[.]"). We disagree.

Unimed's unclean-hands argument is based on Fox's alleged negligence in allocating payments, which caused it to stop selling ad spots to Unimed on the mistaken belief that Unimed was in arrears. But as we indicated in Section III.A., Fox had no obligation to sell any more ad spots to Unimed and it could refuse to do so for any lawful reason. Fox's exercise of that prerogative was not inequitable.

\* \* \*

For the reasons stated, we will affirm the District Court's summary judgment.