**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0444-25

GREGORY WILSON,

    Plaintiff-Appellant,

v.

KAREN MOORE,

    Defendant-Respondent.

_____

Submitted May 12, 2026 – Decided May 29, 2026

Before Judges Perez Friscia and Vinci.

On appeal from the Superior Court of New Jersey, Law Division, Warren County, Docket No. SC-000102-25.

Gregory Wilson, self-represented appellant.

Respondent has not filed a brief.

PER CURIAM

    Plaintiff Gregory Wilson, self-represented, appeals from a September 8, 2025 Special Civil Part, Small Claims Section judgment entered in favor of defendant Karen Moore following a bench trial. We affirm.

## I.

The judge conducted a bench trial on September 8, 2025. Plaintiff testified that on April 4, 2025, he purchased a golden retriever puppy from defendant's business, Icewind Goldens (Icewind), for $5,000. The puppy "seemed to be healthy and happy and she was a joy." Unfortunately, the puppy died on May 2, 2025.

The puppy slept in the same room as plaintiff and his wife. While they were asleep, they "heard a noise and . . . checked on [the puppy] . . . and thought she was okay." "It seem[ed] like she fell into a . . . [small] picture that was leaning against the wall . . . [a]nd it made a clatter that might have scared her. But she ran across the room." They "went back to bed. And in the morning, she was dead." The puppy's "first post-purchase appointment with the veterinarian was scheduled for" later that same day.

Plaintiff took the puppy's remains to Dr. Melissa Shendell at Martinsville Veterinary Hospital. Plaintiff testified Dr. Shendell "found no visible signs of injury and recommended [the puppy's] remains be sent to the New Jersey Animal Health Diagnostic Lab[oratory]." "That lab performed a necropsy and then sent tissue samples to the Texas A&M Veterinary Medical Diagnostic Laboratory [(TVMDL)]."

2

A-0444-25

In a final report dated May 9, 2025, TVMDL noted, "[i]t is speculation[,] but the heart and lung findings could suggest an underlying congenital problem with the heart leading to an acute arrythmia/failure [(the TVMDL report)]." Plaintiff forwarded the TVMDL report to defendant, who "replied that she would . . . share it with her own veterinarian and get back to" him. "When she did, [defendant] told [him] that she had been diligent and did not believe [the puppy's] death was due to any fault of hers." Plaintiff testified defendant "made an ambiguous offer to consider giving [him] a new puppy from a 2026 litter."

On August 4, 2025, Dr. Shendell prepared a "[s]ummary of [c]ommunication[s] and [c]ase [d]etails" in which she "summarize[d] the clinical interactions and findings related to" the puppy. She stated that in the TVMDL report "[t]he most probable cause of death was determined to be a congenital defect of the heart, which likely led to acute arrhythmia and sudden cardiac failure." The TVMDL report and Dr. Shendell's summary were admitted at trial without objection.

Plaintiff also testified that Icewind's website stated "[a]ll of our puppies come with a [v]eterinarian's [h]ealth [c]ertificate so you will receive a happy and healthy puppy. Also included are age[-]appropriate [v]accines,

3

dewormings, A[merican] K[ennel] C[lub] papers, a lifetime health guarantee[,] and lifetime breeder support."

On August 14, 2025, plaintiff filed his complaint in this action seeking a refund of the purchase price "[i]n light of Icewind's health guarantee as stated on its website," and the specialized regulations governing dog and cat sales by pet dealers implemented by the Division of Consumer Affairs, N.J.A.C. 13:45A-12.1 to -12.3, as authorized by the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 to -233.

Defendant testified that her veterinarian, Dr. Nicole Zaccheo of Warren Animal Hospital, examined the puppy before plaintiff purchased it and "found nothing wrong with the puppy so it was issued a health certificate." Dr. Zaccheo's health certificate was admitted at trial without objection. Defendant testified both of the puppy's parents were subjected to basic and advanced cardiac testing by Dr. Zaccheo and another cardiologist, and the tests "have all been clear." The parents were also subjected to genetic testing, including "three different heart tests." The cardiac and genetic testing reports were admitted at trial without objection. Plaintiff also "stipulate[d] that [the puppy's] parents were healthy."

4

Defendant testified she did not know "why the . . . puppy died." She initially offered plaintiff "a puppy from [her] next litter in 2026. But that . . . changed because [she] recently had a litter" and had "a puppy . . . [she was] willing to give him."

The judge entered judgment in favor of defendant the same day, supported by an oral decision. The judge found plaintiff failed to provide a competent veterinary certification containing a "statement that the veterinarian certifies the animal to be 'unfit for purchase'" and "a statement setting forth the probable cause of death" as required by N.J.A.C. 13:45A-12.3.

The judge noted the TVMDL report used "the word speculation" and then "to make it worse" stated the findings "could suggest" an underlying congenital problem with the heart. He found that Dr. Shendell's claim that the "most probable cause of death was determined to be a congenital defect of the heart" in the TVMDL report was "certainly a play on words from what was written by" TVMDL because the TVMDL report "does[ not] say that."

He found the puppy "was never certified as being unfit for purchase by any veterinarian due to any congenital or hereditary condition" and there was only "speculation that[ is] what happened." The judge determined he could not "make a decision based upon speculation" and needed "some type of reasonable

A-0444-25

degree of certainty." He concluded "there was no determination the dog was unfit and there[ was] no proper attestation to the actual cause. There[ was] speculation."

The judge rejected plaintiff's claim based on Icewind's health guarantee. He found the terms of the guarantee were "not spelled out" and "there was an offer that . . . defendant would provide [plaintiff] with another dog." This appeal followed.

## II.

On appeal, plaintiff argues he is entitled to a refund of the purchase price pursuant to N.J.A.C. 13:45A-12.3 because he timely obtained the TVMDL report and notified defendant of his decision to elect a full refund. He argues the judge "erred as a matter of law by imposing an ad hoc standard for veterinary certification" because the TVMDL report was sufficient to establish the probable cause of death was due to a congenital or hereditary cause or condition. He also contends, even if the TVMDL report was insufficient, "Dr. Shendell's conclusions are indisputably beyond the degree of certainty required."

Plaintiff also argues, for the first time on appeal, the judge: (1) improperly considered evidence that defendant "performed her due diligence in obtaining veterinary clearance" of the puppy and its parents; and (2) improperly

A-0444-25

considered his own and defendant's personal medical theories. Finally, plaintiff contends the judge "erred as a matter of law by voiding Icewind's unambiguous health guarantee."

III.

In a non-jury case, "[a]ppellate courts defer to a trial court's factual findings when they are 'supported by adequate, substantial, credible evidence.'" N.J. Div. of Child. Prot. & Permanency v. B.P., 257 N.J. 361, 373 (2024) (quoting Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)). "That deference is especially appropriate 'when the evidence is largely testimonial and involves questions of credibility.'" C.R. v. M.T., 257 N.J. 126, 139 (2024) (quoting MacKinnon v. MacKinnon, 191 N.J. 240, 254 (2007)). "[B]ecause it has the opportunity to make first-hand credibility judgments about the witnesses who appear on the stand; it has a 'feel of the case' that can never be realized by a review of the cold record." N.J. Div. of Youth & Fam. Servs. v. E.P., 196 N.J. 88, 104 (2008) (quoting N.J. Div. of Youth & Fam. Servs. v. M.M., 189 N.J. 261, 293 (2007)).

We are satisfied the judge correctly determined plaintiff failed to provide sufficient veterinary evidence to satisfy the requirements of N.J.A.C. 13:45A-12.3. That regulation, which all parties agree applies in this case because

defendant qualifies as a "pet dealer" as defined in N.J.A.C. 13:45A-12.1, provides, in relevant part:

> If . . . a licensed veterinarian certifies . . . an animal to be unfit for purchase due to a congenital or hereditary cause or condition . . . [i]n the event of the animal's death within six months after delivery to the consumer due to a congenital or hereditary cause or condition, . . . [the consumer shall have] the right to receive a full refund of the purchase price . . . plus reimbursement of veterinary fees incurred prior to the death of the animal.
>
> [N.J.A.C. 13:45A-12.3(6).]

Pursuant to N.J.A.C. 13:45A-12.3(7), "[t]he certification of unfitness shall contain . . . [a] statement that the veterinarian certifies the animal to be 'unfit for purchase' [and] . . . [w]here the animal has died, a statement setting forth the probable cause of death."

As the judge properly determined, the TVMDL report falls well short of satisfying these requirements. First, the report does not include a certification by a veterinarian that the animal was "unfit for purchase," as expressly required by N.J.A.C. 13:45A-12.3(7).

Second, as the judge correctly determined, the report does not contain a statement setting forth the probable cause of death. Our review of a trial court's interpretation of a statute or regulation is de novo. Kocanowski v. Township of

8                                                          A-0444-25

Bridgewater, 237 N.J. 3, 9 (2019). "We give words their plain meaning and apply the statutory language sensibly." All the Way Towing, LLC v. Bucks County Int'l, Inc., 236 N.J. 431, 442 (2019) (quoting Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 553 (2009)).

Although the phrase "probable cause" is not capable of precise definition, probability generally means something less than certainty but that "given all the available evidence, seems more likely than not to happen or to have happened." Black's Law Dictionary 1455 (12th ed. 2024). The TVMDL report merely states it is "speculation" that the findings "could suggest" an "underlying congenital problem." "Probable cause" requires significantly more than "speculation" that "could suggest" the animal's death resulted from a congenital cause or condition. The TVMDL report, therefore, does not contain a "statement setting forth the probable cause of death" as required by N.J.A.C. 13:45A-12.3(7).

We are also convinced the judge properly determined Dr. Shendell's summary is insufficient. Dr. Shendell's summary, like the TVMDL report, does not contain a certification that the animal was "unfit for purchase." Moreover, Dr. Shendell's summary merely purports to restate the findings contained in the TVMDL report. As the judge aptly observed, her claim that the "probable cause of death was determined to be a congenital defect" misstates the content of the

A-0444-25

TVMDL report. The TVMDL report does not contain any such finding. Importantly, Dr. Shendell does not express any independent opinion on the cause of death based on her own review of the underlying data.

Plaintiff's reliance on Maguire v. Mohrmann, 397 N.J. Super. 103 (App. Div. 2007), for the proposition that "mere suspicion that the cause of death was congenital is sufficient to satisfy" N.J.A.C. 13:45A-12.3(7) is misplaced. In Maguire, we considered whether the plaintiff substantially complied with the applicable regulations by attaching her veterinarian's certification to the complaint after defendant "spoke to [the] plaintiff's veterinarian and learned of the suspected cause of death." Id. at 110-11. The parties did not contend the veterinarian's certification provided in that case was insufficient, and we did not determine whether the requirement in N.J.A.C. 13:45A-12.3(7), that the certification contain "a statement setting forth the probable cause of death," can be satisfied by a statement that does not comply with that requirement.

We are also convinced the judge properly dismissed plaintiff's claim that defendant was required to refund the purchase price based on "Icewind's health guarantee." Because contract interpretation is a question of law we review de novo, we "pay no special deference to the trial court's interpretation and look at the contract with fresh eyes." Del. River Joint Toll Bridge Comm'n v. George

A-0444-25

Harms Constr. Co., 258 N.J. 286, 303 (2024) (quoting Kieffer v. Best Buy, 205 N.J. 213, 223 (2011)).

Based on our de novo review, we conclude the judge correctly determined plaintiff failed to establish a right to a refund based on the "health guarantee" because the terms of the guarantee were "not spelled out," and it did not set forth a right to a refund. Additionally, there is no reason for us to disturb the judge's finding that, to the extent the health guarantee constituted a binding contract, defendant satisfied her obligations by offering to provide plaintiff with a puppy of equal value.

Plaintiff's arguments, raised for the first time on appeal, that the judge erred by considering evidence that defendant "performed her due diligence in obtaining veterinary clearance" of the puppy and its parents, and improperly considered his and defendant's personal medical theories, lack merit. As discussed, the judge determined plaintiff did not provide a veterinarian's certification in compliance with N.J.A.C. 13:45A-12.3(7) and failed to establish a right to a refund under the health guarantee. The judge's decision was not based on evidence that defendant "performed her due diligence," nor was it premised on his or defendant's "personal medical theories."

11

To the extent we have not specifically addressed any remaining arguments, it is because they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-0444-25