

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-3-2004

# Derienzo v. Harvard Ind Inc

Precedential or Non-Precedential: Precedential

Docket No. 02-4548

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

## Recommended Citation

"Derienzo v. Harvard Ind Inc" (2004). *2004 Decisions.* Paper 968.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/968

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES
COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 02-4548

DENNIS DERIENZO,
CAPTAIN, U.S.M.C.;
KRISTEN DERIENZO, his wife,
                                    Appellants

v.

HARVARD INDUSTRIES, INC.;
JOHN DOES 1-25 (Unknown
individuals and entities);
LOCKLEY MANUFACTURING
COMPANY;
ENTWISTLE CO.;
LASKO PRODUCTS, INC. f/k/a
LASKO METAL PRODUCTS, INC.

On Appeal from the
United States District Court for the
District of New Jersey
D.C. Civil Action No. 00-cv-05516
(Honorable U.S. Magistrate Judge
John J. Hughes)

Argued October 27, 2003
Before: SCIRICA, *Chief Judge*,
NYGAARD and AMBRO,
*Circuit Judges*

(Filed: February 3, 2004 )

ALAN B. HANDLER, ESQUIRE
(ARGUED)
ALAN M. DARNELL, ESQUIRE
Wilentz, Goldman & Spitzer
90 Woodbridge Center Drive, Suite 900
Woodbridge, New Jersey 07095
        Attorneys for Appellants

ALBERT J. D'AQUINO, ESQUIRE
(ARGUED)
Goldberg Segalla LLP
120 Delaware Avenue, Suite 500
Buffalo, New York 14202

STEPHEN G. TRAFLET, ESQUIRE
DEBRA M. ALBANESE, ESQUIRE
Traflet & Fabian
Carriage Court Two
264 South Street
Morristown, New Jersey 07960
        Attorneys for Appellee,
        Lasko Products, Inc. f/k/a
        Lasko Metal Products, Inc.

OPINION OF THE COURT

SCIRICA, *Chief Judge*.

In this products liability case, the issue on appeal is whether plaintiff should be allowed to amend his complaint under Fed. R. Civ. P. 15(c) to substitute defendant manufacturer for a fictitious name under New Jersey Rule 4:26-4 after the statute of limitations had expired. The court[1] held that plaintiff failed to satisfy

---

[1]The parties consented to jurisdiction of a magistrate judge under 28 U.S.C. §

the due diligence requirement of N.J.R. 4:26-4 and granted defendants' motion for summary judgment. We will reverse and remand.

## I.

On February 10, 1999, plaintiff Dennis DeRienzo, a Captain in the United States Marine Corps, was grievously injured when the Cobra helicopter he co-piloted crashed in a routine training flight involving a rocket firing exercise. The crash resulted when a rocket's aft retainer ring separated from the rocket launcher skin and struck the rear stabilizer of the helicopter, causing loss of control. DeRienzo sustained severe bodily injuries, remaining in a body cast for nine months.

On June 11, 1999, four months later, DeRienzo requested a copy of the JAG Manual report on the accident under the Freedom of Information Act (FOIA). On March 2, 2000, the Naval Air Systems Command responded by forwarding the results of the accident investigation performed December 17, 1999, plus 53 attachments. The report and attachments recited that the crash occurred because of a defective LAU-10 rocket launcher but provided no information about the rocket launcher's manufacturer or how to identify the manufacturer.

On April 19, 2000, DeRienzo's military law attorney, Vaughan Taylor, made a second FOIA request, specifically asking for the name of the rocket launcher's manufacturer. On May 5, 2000, DeRienzo received a reply from the staff

636(c) and Fed. R. Civ. P. 73.

judge advocate for the United States Marine Corps which stated:

> The manufacturer of the LAU-10 5.0 inch rocket launcher was the Lockley Manufacturing Company, Inc. of New Castle, PA. The LAU-10 was made in the 1960's as a LAU-10A/A and was subsequently reworked into a LAU-10D/A in the 1970's by Harvard Interiors [sic] of St. Louis, MO. Lockley Manufacturing Company, Inc. has, we believe, gone out of business. . . .
>
> Two avenues of inquiry for you would be the Naval Air Systems Command and Naval Surface Warfare Center. . . .

Taylor did not attempt to contact Lockley Manufacturing because, based on the letter, he believed the company had gone out of business. Instead, Taylor sent additional FOIA requests to the Naval Air Systems Command and to the Naval Surface Warfare Center, the two naval agencies mentioned in the staff judge advocate's letter.

On June 22, 2000, in response to the third FOIA request, the Naval Surface Warfare Center sent a copy of the Engineering Investigation Report, dated June 25, 1999, which stated that "[a]n investigation into the subject launcher history revealed that the launcher Lot is LMP-7-0569."

On August 4, 2000, the Naval Air Systems Command responded by letter directly to DeRienzo on his fourth FOIA request, stating, "Cognizant personnel

have determined that the manufacturer of the LAU-10 on the aircraft involved in the incident was Lockley Manufacturing Company, Inc. of New Castle Pennsylvania . . . . These cognizant persons also indicated this command does not have any information not in the JAG investigation of the incident."[2]

On November 8, 2000, DeRienzo filed a complaint in federal court against Harvard Industries, the company believed to have refurbished the rocket launcher during the period between manufacture and his accident.[3] DeRienzo also named fictitious defendants John Does 1-25. The complaint alleged, "Defendant Harvard Industries . . . designed, manufactured, assembled, installed, modified, maintained, sold and/or distributed" the rocket launcher involved in the accident. DeRienzo did not name Lockley Manufacturing as a defendant because he believed it had gone out of business.

The trial court held an initial scheduling conference on March 6, 2001

and gave the parties until October 5, 2001 to conclude fact discovery.

On May 29, 2001, an engineering consultant retained by DeRienzo inspected the recovered portion of the rocket launcher. The identification plate on the launcher included the notation "CONTRACT NO. N00104-75-C-B002" and the notation "CONTRACTOR LOCKLEY MFG CO., INC. NEW CASTLE." The tag also had the titles "INSPECTED," "MANUFACTURER" and "LOT NO.," but the information following the titles was illegible.

On May 31, 2001, counsel for DeRienzo and Harvard Industries deposed Haywood Hedgeman and Charles Paras, both Navy employees from the Naval Surface Warfare Center, Indian Head Division. Hedgeman and Paras testified they believed Lockley Manufacturing was the rocket launcher's original manufacturer. Paras believed the identification tag was a manufacturer identification tag, and the lot number LMP-7-0569 on the tag was short-hand for "Lockley Manufacturing, Pennsylvania." He also believed Lockley manufactured the rocket launcher in the mid-1960s.

Based on this testimony, DeRienzo concluded Lockley Manufacturing was the original manufacturer of the rocket launcher. DeRienzo amended his complaint on June 28, 2001, four months after the statute of limitations expired, to substitute Lockley Manufacturing and Entwistle Company, Lockley's successor as the result of a merger, for two of the 25 fictitious defendants named in his original November 8, 2000 complaint. DeRienzo

---

[2]The three Navy personnel involved in drafting the August 20, 2000 FOIA response letter later testified they had no personal knowledge regarding which company manufactured the rocket launcher, but merely reported information they had received from Navy employee Charles Paras.

[3]By this point, DeRienzo had retained attorney Alan Darnell as counsel. The record does not specify the exact date Darnell began his representation of DeRienzo.

retained the other 23 fictitious defendants in the complaint but ceased taking steps to locate other defendants.

After being added to the suit, Entwistle Company retained attorney Henry Steck as counsel. Steck had previously worked as a procurement officer for the United States Air Force and was familiar with labeling in procurement-related matters. Based on knowledge gained during his prior federal contracting experience, Steck believed the identification tag likely indicated that Lockley Manufacturing was the contractor for a 1975 fiscal year contract, not the original manufacturer. His view directly contradicted the information provided by Paras and Hedgeman, the persons identified by the Navy as "cognizant personnel" regarding the rocket launcher. Steck reviewed a Lockley Manufacturing shop order logbook in Entwistle/Lockley's possession, which Entwistle Company had not disclosed to DeRienzo in its Fed. R. Civ. P. 26 discovery requests.[4] The logbook revealed that Lockley Manufacturing modified LAU-10 rocket launchers in 1974-75 under Contract N00104-75-C-B002. This confirmed that Lockley was the contractor that modified the rocket launcher, not the original manufacturer.

_____

[4]Entwistle Company stated in its initial Rule 26(a)(1) disclosure:

> This defendant is unaware of any documents, data compilations or tangible things in its possession, custody or control to support its defenses in this matter.

On February 28, 2002, counsel for DeRienzo, Harvard Industries, and Lockley/Entwistle took second depositions of Paras and Hedgeman. Paras acknowledged he was no longer certain that "LMP" actually referred to Lockley Manufacturing. Hedgeman testified he believed Lockley Manufacturing was the original manufacturer of the rocket launcher solely because it was listed as the "contractor" on the identification tag. Paras also testified he believed that the rocket launcher was originally manufactured in May 1969 because "0569" designated the month and year the launcher was originally manufactured.[5]

Based on Paras's new testimony that the rocket launcher was manufactured in May 1969, Steck revisited Lockley's logbook. The logbook revealed that Lockley Manufacturing had ceased manufacturing LAU-10 rocket launchers in 1967. The logbook also recited that Lockley Manufacturing had purchased 13,500 stacking lugs from Lasko Metal Products on December 2, 1968, but it did not state for what purposes Lockley Manufacturing used the lugs. Steck explained in his affidavit that, "[p]rior to Paras' February 28, 2002 testimony, there was no reason to suspect that this shop order for LAU-10 components purchased by Lockley from Lasko Metal Products had any relationship whatsoever to the fabrication of the rocket launcher in question, which Navy personnel had

_____

[5]This testimony directly contradicted Paras's previous testimony that the rocket launcher was manufactured in the mid-1960s.

previously said was manufactured by Lockley in the mid-1960s."

On March 14, 2002, Steck deposed Lockley Manufacturing's former president and chief engineer Norman Smilek. Smilek had retired from Lockley Manufacturing in 1992 and was living in Florida.[6] Steck asked Smilek for information regarding lot number LMP-7-0569. Smilek replied that Lasko Metal Products, not Lockley Manufacturing, used the "LMP" designation on its identification tags. Steck immediately informed counsel for DeRienzo and Harvard Industries of Smilek's testimony, identifying Lasko Metal Products as the manufacturer of the rocket launcher.

DeRienzo requested and was granted leave to file a second amended complaint in early April 2002 to substitute Lasko Metal Products for fictitious defendant "John Doe 4." Lasko Metal Products received its first notice of the suit when served with a Summons and the Second Amended Complaint on April 18, 2002, fourteen months after the statute of limitations had expired. Lasko Metal Products moved for summary judgment, arguing DeRienzo had not exercised due diligence in identifying it as a potential defendant before the expiration of the statute of limitations, as required by the New Jersey Fictitious Pleading Rule, N.J.R. 4:26-4. The court granted Lasko Metal Products' motion for summary

judgment. DeRienzo filed a motion to reconsider, which the court denied. DeRienzo appealed.

## II.

We have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over the court's entry of summary judgment. *Curley v. Klem,* 298 F.3d 271, 276-77 (3d Cir. 2002).

## III.

## A.

Under certain conditions, Federal Rule of Civil Procedure 15(c) provides for relation back, i.e., permitting an amended pleading to relate back to the date of the original complaint.[7] Under Rule 15(c)(1),

---

[6]The record does not specify how Steck located Smilek, or whether DeRienzo could have similarly located Smilek.

[7]Fed. R. Civ. P. 15 provides in part:
(c) Relation Back of Amendments. An amendment of a pleading relates back to the date of the original pleading when
(1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or
(2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or
(3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the

"[a]n amendment of a pleading relates back to the date of the original pleading when (1) relation back is permitted by the law that provides the statute of limitations applicable to the action." Fed. R. Civ. P. 15(c)(1). The court may apply the state law that establishes the limitations period to determine whether relation back is permissible.[8]

Personal injury tort actions in New Jersey are governed by a two-year statute of limitations, N.J.S.A. 2A:14-2,[9] but the statute may be tolled if the plaintiff invokes the New Jersey fictitious party rule before expiration of the limitations period. This rule provides:

> In any action, . . . if the defendant's true name is unknown to the plaintiff, process may issue against the defendant under a fictitious name, stating it to be fictitious and adding an appropriate description sufficient for identification.

N.J.R. 4:26-4.

The fictitious party rule may be used only if the plaintiff exercised due diligence to ascertain the defendant's true name before and after filing the complaint. *Farrell v. Votator Div. of Chemetron Corp.,* 299 A.2d 394, 396 (N.J. 1973); *Claypotch v. Heller, Inc.,* 823 A.2d 844, 848-49 (N.J. Super. Ct. App. Div. 2003). But N.J.R. 4:26-4 is not available if a plaintiff should have known, by exercise of due diligence, defendant's identity prior to the expiration of the statute of limitations. *Mears v. Sandoz Pharms., Inc.,* 693 A.2d 558, 561-63 (N.J. Super. Ct. App. Div. 1997). The fictitious name designation also must have appended to it "an appropriate description sufficient to identify" the defendant. *Rutkowski v.*

---

party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

Fed. R. Civ. P. 15 (2003).

[8]The Advisory Committee's Note to the 1991 Amendment to Rule 15 explains:

[Rule 15(c)(1)] is new. It is intended to make it clear that the rule does not apply to preclude any relation back that may be permitted under the applicable limitations law. Generally, the applicable limitations law will be state law . . . . Whatever may be the controlling body of limitations law, if that law affords a more forgiving principle of relation back than the one provided in this rule, it should be available to save the claim.

Fed. R. Civ. P. 15 advisory committee's note to 1991 amendment.

[9]The statute provides: "Every action at law for an injury to the person caused by the wrongful act, neglect or default of any person within this state shall be commenced within two years next after the cause of any such action shall have accrued." N.J.S.A. 2A:14-2.

*Liberty Mut. Ins. Co.,* 506 A.2d 1302, 1306-07 (N.J. Super. Ct. App. Div. 1986). Furthermore, application of N.J.R. 4:26-4 must not prejudice the defendant. *Farrell,* 299 A.2d at 400; *Mears,* 693 A.2d at 563-64.

### B.

DeRienzo invoked the fictitious party rule in his initial complaint within the statute of limitations period. At issue is whether DeRienzo employed due diligence in attempting to identify Lasko Metal Products as the original manufacturer of the rocket launcher before the statute expired.

The New Jersey Supreme Court has not provided a standard definition of diligence, since "the meaning of due diligence will vary with the facts of each case." *O'Keefe v. Snyder,* 416 A.2d 862, 873 (N.J. 1980). *See also Seaman v. Monmouth County,* 191 A. 103, 104 (N.J. 1935) ("[W]hat is due diligence must be determined on the facts of each particular case.").[10] In the context of N.J.R. 4:26-4, plaintiffs must "investigate all potentially responsible parties in a timely manner" to cross the threshold for due diligence. *Matynska v. Fried,* 811 A.2d 456, 457 (N.J. 2002). DeRienzo contends he persevered in his efforts to locate all potentially responsible parties but was thwarted in his investigation by misinformation from government witnesses. Lasko Metal Products

---

[10]The dictionary definition of diligence is the "devoted and painstaking application to accomplish an undertaking." *Webster's Third New Int'l Dictionary* 633 (1993).

maintains DeRienzo has not met his burden.

New Jersey Supreme Court and appellate court case law provides helpful guidance in understanding the parameters for the exercise of diligence. In *Farrell v. Votator Division of Chemetron Corp.,* the New Jersey Supreme Court allowed a N.J.R. 4:26-4 substitution of a newly-named defendant ten months after the statute of limitations had expired. 299 A.2d. at 400. Plaintiff was injured while cleaning an industrial machine but did not obtain counsel until 23 months after injury. *Id.* at 395. Before the statute of limitations expired, plaintiff filed a complaint naming fictitious parties. Ten months later, in a deposition, plaintiff was able to identify the machine's manufacturer and sought leave to amend his complaint. *Id.* Even though the statute of limitations had expired, the court allowed the substitution, finding that "plaintiffs in good faith brought their action expeditiously against the manufacturer under a fictitious name, identified it by amendment as soon as they discovered its true name, and served the amended complaint diligently thereafter." *Id.* at 400. The court also held that defendant was not prejudiced by the delay, and that interests of justice favored plaintiff receiving his day in court. *Id.*

By contrast, plaintiff in *Mears v. Sandoz Pharmaceuticals* failed to determine the identity of the general contractor on the day of his workplace injury until two and a half years after the incident. 693 A.2d at 562-63. A New Jersey appellate court held that plaintiff's failure to exercise due diligence precluded application of the fictitious party rule. *Id.*

at 562. Plaintiff failed to make a "simple inquiry at the job site," nor did he obtain and review the contractor meeting minutes or the relevant daily force report, on which the contractor's letterhead was printed. *Id.* at 563. Had plaintiff taken any of these steps, he would have easily discovered the identity of the general contractor. *Id.*

Likewise, in *Matynska v. Fried,* the New Jersey Supreme Court held that plaintiff had not met the N.J.R. 4:26-4 diligence threshold in a medical malpractice case. 811 A.2d at 457-58. Plaintiff brought a malpractice suit against doctors who performed her hip replacement surgery, including fictitious parties for unidentified medical personnel. *Id.* Although one surgeon (Dr. Feierstein) had substituted for her regular orthopedic surgeon (Dr. Fried), plaintiff failed to discover Dr. Feierstein's identity until four years after surgery. *Id.* Plaintiff was not permitted to amend her complaint under N.J.R. 4:26-4, because she had not investigated "all potentially responsible parties in a timely manner." *Id.* at 458. By merely looking in a telephone book or contacting Dr. Fried or the hospital, the court reasoned, plaintiff could have easily discovered Dr. Feierstein's role in her surgery. *Id.* at 457. Dr. Feierstein's name also appeared twice on her hospital charts. *Id.; see also Johnston v. Muhlenberg Reg'l Med. Ctr.,* 740 A.2d 1122 (N.J. Super. Ct. App. Div. 1999) (denying N.J.R. 4:26-4 substitution for medical malpractice claim for similar reasons).

## C.

Identifying Lasko Metal Products as a potential defendant proved to be considerably more difficult than the situations encountered by plaintiffs in *Matynska* and *Mears.* As noted, the name "Lasko" was not identified on the rocket launcher. And significantly, Navy employees Paras and Hedgeman both testified they believed the designation "LMP" stood for "Lockley Manufacturing, Pennsylvania," leading DeRienzo to believe mistakenly the witnesses had correctly identified the defendant manufacturer.

It is apparent that DeRienzo consistently took active steps to identify the original manufacturer of the rocket launcher. DeRienzo submitted four FOIA requests between June 1999 and July 2000. After learning of Harvard Industries' involvement in refurbishing the rocket launcher in May 2000, he filed his initial complaint six months later. In May 2001, DeRienzo retained an expert to inspect the rocket launcher and deposed two Navy employees, who both confirmed that Lockley manufactured the rocket launcher. He substituted Lockley/Entwistle as defendants one month later, in June 2001.

The court stated here, "[H]ad Plaintiffs sought the logbook, they would have discovered Defendant Lasko's existence and identity in a timely fashion." App. 23a. But DeRienzo did not know there was a logbook, and Entwistle Company did not acknowledge its existence in its initial Fed. R. Civ. P. 26(a)(1) disclosures. Even if DeRienzo had obtained the logbook during the initial

discovery period, more information was required to link "LMP" to Lasko Metal Products. The logbook merely mentioned Lasko Metal Products as a supplier of stacking lugs. It did not specify that Lockley Manufacturing had used those stacking lugs in the production or modification of the LAU-10 rocket launcher. Furthermore, Paras initially testified that the rocket launcher was manufactured in the mid-1960s. But the logbook recited that Lockley Manufacturing purchased stacking lugs from Lasko Metal Products in December 1968, after the supposed production date of the rocket launcher. There was no apparent reason to link the stacking lugs to their use as components in the LAU-10 rocket launcher until Paras testified on February 28, 2002 that the rocket launcher was originally manufactured in May 1969, not the mid-1960s. The connection between Lasko Metal Products and Lockley Manufacturing as documented in the logbook, therefore, appears tenuous.

This is not to say that DeRienzo could not have taken further steps to discover Lasko Metal Product's identity before the statute of limitations expired. DeRienzo's military attorney might have contacted the state corporate registry to determine Lockley Manufacturing's successor after receiving the second FOIA response.[11] Or DeRienzo might have asked Lockley Manufacturing for a list of former CEOs or chief engineers and deposed them to discover the meaning of the LMP designation. Yet it bears noting that the key that unlocked the identity of the manufacturer here was not a fact or expert witness, but Entwistle Company's attorney, Henry Steck, whose familiarity with procurement led him to undertake additional discovery and draw inferences not apparent to the other witnesses and attorneys.

Nevertheless, DeRienzo submitted four FOIA requests, hired an expert to examine the rocket launcher, deposed "cognizant Navy personnel" twice, and promptly substituted named defendants after confirming their identities. In addition, DeRienzo's efforts were stymied by misleading information from certain authoritative witnesses and a lack of complete disclosure by one of the defendants. While he might have done more, we hold DeRienzo satisfied the due diligence requirements under New Jersey Rule 4:26-4.

**D.**

One additional factor in determining the applicability of N.J.R. 4:26-4 is whether the delay in amending the complaint prejudiced the newly-named defendant. *Farrell,* 299 A.2d at 400; *Garay,* 598 A.2d at 24. Because it found no due diligence, the court here did not

---

[11]One New Jersey appellate court has suggested that a previous attorney's lack of diligence should not be attributed to the current attorney's efforts. *See Garay v. Star Ledger,* 598 A.2d 22, 24 (N.J. Super. Ct. Law Div. 1991). As noted,

DeRienzo's current attorney, Alan Darnell, began his representation in substitution for his military attorney some time during the year 2000. In our analysis, we see no need to address the issue.

analyze whether Lasko Metal Products demonstrated substantial prejudice.[12]

New Jersey courts have noted certain factors where substitution of a newly-named defendant would cause substantial prejudice. These include destruction or alteration of evidence after the initial discovery period, frustration of attempts at subsequent examination, or witness unavailability or memory lapse due to delay. *Farrell*, 299 A.2d at 400; *Mears*, 693 A.2d at 563-64; *Garay*, 598 A.2d at 24. The New Jersey Supreme Court has not indicated whether the passage of time alone can prejudice a newly-named defendant, and if so, the likely outer limits of delay.[13] Some, but not all, New Jersey appellate courts have found some prejudice as a result of delay alone.[14]

No representation has been made in this case that the remains of the helicopter and rocket launcher are no longer available

---

[12]The only mention of possible prejudice appeared as an addendum to the due diligence analysis:

> Furthermore, where the Plaintiffs' diligence in timely pursuing a claim must be balanced with any prejudice to the Defendant in defending stale claims, justice does not tip the balance toward the Plaintiffs having their day "in court on the merits of [their] claim" (citations omitted).

App. 2a.

[13]The *Farrell* court did not address whether a lapse of time by itself could prejudice a defendant. 299 A.2d at 400. It held instead that, given the facts of the case, "[t]here is no suggestion that the lapse of time has resulted in loss of evidence or impairment of ability to defend, nor is there any suggestion that the plaintiffs have been advantaged by it." *Id.*

Two other New Jersey Supreme Court cases have addressed R. 4:26-4, but did not analyze the issue of prejudice. *See Matynska,* 811 A.2d at 457-58 (holding that plaintiff lacked diligence, and obfuscatory tactics by defendants should not be considered); *Viviano v. CBS, Inc.,* 503 A.2d 296, 306 (N.J. 1986) (noting that defendant stipulated it had not been prejudiced by the time delay).

[14]New Jersey appellate courts have taken different approaches to the issue of prejudice resulting from time delay. *See Johnston,* 740 A.2d at 1125 (where plaintiff moved to amend the complaint to add a named defendant eight months after the statute of limitations had expired, the court held that defendant "was prejudiced by the passage of time, even if only in the context of her right to repose"); *Mears,* 693 A.2d at 562-63 ("[T]here cannot be any doubt that a defendant suffers some prejudice merely by the fact that it is exposed to the potential liability for a lawsuit after the statute of limitations has run."). *But see Claypotch,* 823 A.2d at 850 (holding that, while a defendant may suffer some prejudice through exposure to liability, plaintiffs should still have "their day in court" unless the lapse of time has resulted in a loss of evidence, advantage to plaintiffs or impairment of the ability to defend).

for inspection, or that relevant witnesses are no longer available to testify. Lasko Metal Products contends its inability to participate in discovery "severely prejudiced . . . its ability to defend against the merits of the claim" yet provides no reason why this is necessarily so. Initial discovery served mainly to identify the manufacturer of the rocket launcher, so Lasko's interests do not appear to have been harmed. Should Lasko Metal Products request additional discovery, we are confident the court, in the exercise of its sound discretion, would permit it. While there has been delay in this case, we see no prejudice and no apparent reason why this factor should be dispositive to defeat plaintiff's N.J.R. 4:26-4 motion. *See James v. Chevron U.S.A., Inc.,* 694 A.2d 270, 288 (N.J. Super. Ct. App. Div. 1997) (holding that a plaintiff's R. 4:26-4 motion should be accepted unless the relation-back procedure would result in "perceivable undue prejudice" to defendants); *Garay,* 598 A.2d at 24 (holding that the passage of time did not "substantial[ly] prejudice" the defendant).

## IV.

For the foregoing reasons, we will reverse the grant of summary judgment and remand for further proceedings consistent with this opinion.

A True Copy:

Teste: *Clerk of the United States Court of Appeals for the Third Circuit*