PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 18-1062

_____

SUN CHEMICAL CORPORATION,

Appellant

v.

FIKE CORPORATION;
SUPPRESSION SYSTEMS INCORPORATED

_____

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 2-13-cv-04069)
District Judge: Honorable John M. Vazquez

_____

Argued January 8, 2019

Before: AMBRO, KRAUSE, and FUENTES, Circuit Judges

(Dated November 27, 2020)

Jeffrey A. Beer, Jr., Esquire
Lance J. Kalik, Esquire (Argued)
Riker Danzig Scherer Hyland & Perretti
One Speedwell Avenue
Headquarters Plaza
Morristown, NJ  07962

     Counsel for Appellant

Gino P. Mecoli, Esquire (Argued)
Suzanne I. Turpin, Esquire
Reilly Janiczek McDevitt Henrich & Cholden
3 Executive Campus, Suite 310
Cherry Hill, NJ  08002

     Counsel for Appellees

---

OPINION OF THE COURT

---

AMBRO, <u>Circuit Judge</u>

After an explosion at its ink-manufacturing facility, appellant Sun Chemical Corporation sued the manufacturer of its explosion-suppression system under the New Jersey Consumer Fraud Act ("CFA"), N.J. Stat. Ann. § 56:8-1 *et seq*. The District Court granted summary judgment in favor of appellees Fike Corporation and Suppression Systems Inc. (collectively, "Fike"), holding that (1) Sun's CFA claims were absorbed by the New Jersey Products Liability Act ("PLA"), N.J. Stat. Ann. § 2A:58C-1 *et seq.*, and (2) Sun could not prove

that Fike's allegedly fraudulent conduct caused any of its damages. *Sun Chem. Corp. v. Fike Corp.*, No. 13-4069, 2017 WL 6316644 (D.N.J. Dec. 11, 2017) ("*Sun I*"). On appeal, we certified the PLA-absorption issue to the New Jersey Supreme Court. *Sun Chem. Corp. v. Fike Corp.*, No. 18-1062, 2019 WL 9525200 (3d Cir. Apr. 18, 2019).

We now hold, consistent with the New Jersey Supreme Court's opinion, that some of Sun's CFA claims are absorbed by the PLA and some are not. As to Sun's remaining CFA claims, we conclude that Sun demonstrated a genuine issue of material fact on most of those claims. We therefore affirm in part and reverse in part the judgment of the District Court and remand for further proceedings.

## I.     BACKGROUND

For nearly a century, Sun and its predecessors have made black news ink at a manufacturing facility in East Rutherford, New Jersey. In 2012, Sun purchased a dust-collection system that filtered the facility's air for flammable particles produced in the ink-production process. The collection system included a Fike suppression system designed to contain any explosions in case of a fire in the collection system. Sun and Fike communicated many times about the various features of the suppression system before Sun made the purchase. It initially requested a mechanical suppression system using vents but ultimately purchased Fike's chemical explosion-suppression system after discussing the options with a Fike representative.

On the first day the system was fully operational, the dust-collection system caught fire. The suppression system

3

activated an alarm. Though nearby workers did not hear it, they did see a small fire near one of the ducts for the dust-collection system. Shortly after workers extinguished the fire, an explosion sent flames out of the dust-collector system's ducts. It severely injured several Sun employees and caused significant property damage to the facility. The explosion also triggered government investigations and ultimately caused Sun to end its black-ink production at the East Rutherford facility.

Sun sued Fike under the CFA in federal District Court, alleging that Fike misrepresented various aspects of the suppression system in its pre-purchase conversations with Sun. Specifically, Sun complains Fike misrepresented that: (1) the suppression-system alarm would be audible;[1] (2) the suppression system would comply with a specific industry standard, "FM 5700," that required, among other things, two pressure detectors; (3) Fike would provide training to Sun employees; (4) the suppression system had never experienced any failures in the field; and (5) the system was capable of preventing an explosion from entering the facility. Based on these misrepresentations, Sun contends Fike is liable for all injuries and property damage from the explosion, increased

---

[1] On appeal, Sun also argues that Fike misrepresented that its alarm system would be integrated with the Sun facility's fire-alarm system. But Sun did not make this assertion before the District Court, so the argument is forfeited. *Cf. Tri-M Grp., LLC v. Sharp*, 638 F.3d 406, 416 (3d Cir. 2011) ("It is axiomatic that arguments asserted for the first time on appeal are deemed to be waived and consequently are not susceptible to review in this Court absent exceptional circumstances." (quoting *United States v. Petersen*, 622 F.3d 196, 202 n.4 (3d Cir. 2010)) (internal quotations omitted)).

4

distribution and labor costs from the closed facility, expenses incurred by the government investigations, litigation costs and fees, and treble damages.

After the close of discovery, the parties filed cross-motions for summary judgment. The District Court denied Sun's motion and granted Fike's. It held that Sun failed to demonstrate how most of Fike's alleged misrepresentations caused Sun's harm. For instance, the Court concluded that even if the suppression system had only one pressure detector and thus did not comply with FM 5700, Sun still had not shown how the lack of a second pressure detector caused the explosion or any related harm. As to Sun's remaining claims, the District Court held the PLA absorbed Sun's CFA claim. The Court reasoned that, at bottom, Sun was seeking damages because various features of the suppression system failed and that failure caused personal injury to Sun's employees. Because Sun could not "avoid the requirements of the PLA by artfully crafting its claims under the CFA," the Court concluded that Sun's CFA claims were entirely absorbed and precluded by the PLA. *Sun I*, 2017 WL 6316644, at \*13. Sun appealed to us.

After reading the briefs and submissions of the parties, hearing oral argument, and reviewing applicable New Jersey law, we certified four questions to the New Jersey Supreme Court concerning the interplay between the CFA and the PLA. *Sun Chem. Corp. v. Fike Corp.*, No. 18-1062, 2019 WL 9525200 (3d Cir. Apr. 18, 2019). The Supreme Court reformulated the questions into a single inquiry and answered it unanimously. *Sun Chem. Corp. v. Fike Corp.*, 235 A.3d 145, 148 (N.J. 2020) ("*Sun II*"). We now proceed with the benefit of the Court's thoughtful opinion.

5

## II.    ANALYSIS[2]

### A.    Absorption Under the PLA

#### 1.    The New Jersey Supreme Court Opinion

As noted, the New Jersey Supreme Court distilled our certified questions down to a single issue, which was "whether a Consumer Fraud Act claim [can] be based, in part or exclusively, on a claim that also might be actionable under the Products Liability Act." *Sun II*, 235 A.3d at 148 (alteration in original) (internal quotation marks omitted).

The CFA targets "unlawful sales and advertising practices designed to induce customers to purchase merchandise or real estate." *Real v. Radir Wheels, Inc.*, 969 A.2d 1069, 1075 (N.J. 2009) (quoting *Daaleman v. Elizabethtown Gas Co.*, 390 A.2d 566, 568 (N.J. 1978)). Its scope is "both wide and deep," *id.*, as it prohibits "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing[] concealment, suppression, or omission of any material fact . . . in connection with the sale or advertisement of any merchandise or real estate," N.J. Stat. Ann. § 56:8-2. The statute has "three main purposes: to compensate the victim for

---

[2] The District Court had jurisdiction under 28 U.S.C. § 1332(a), and we have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. We review the District Court's summary-judgment ruling *de novo*. *Cranbury Brick Yard, LLC v. United States*, 943 F.3d 701, 708 (3d Cir. 2019).

his or her actual loss; to punish the wrongdoer through the award of treble damages; and, by way of the counsel fee provision, to attract competent counsel to counteract the community scourge of fraud." *Lettenmaier v. Lube Connection, Inc.*, 741 A.2d 591, 593 (N.J. 1999) (internal citations omitted). The CFA, then, is an expansive remedial statute that allows for recovery of damages—as well as treble damages, costs, and fees—arising out of a host of unconscionable business practices. *Sun II*, 235 A.3d at 148. But damages under the CFA are limited to economic losses. *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 369 (N.J. 1997).

The PLA is more limited in scope: it codifies certain "actions for damages for harm caused by products." N.J. Stat. Ann. § 2A:58C-1(a). By its own terms, the PLA does not address "all issues related to product liability." *Id.* Rather, it governs products-liability actions based on "manufacturing defects, warning defects, and design defects." *Sun II*, 235 A.3d at 153 (internal quotation marks omitted). Under the PLA, a "manufacturer or seller of a product" is liable if the product "was not reasonably fit, suitable[,] or safe for its intended purpose." N.J. Stat. Ann. § 2A:58C-2. Further, consistent with the common-law economic loss rule barring recovery for economic losses in a tort action, damages under the PLA are limited to purely non-economic losses. *Dean v. Barrett Homes, Inc.*, 8 A.3d 766, 777 (N.J. 2010).

Here, in view of these separate statutory frameworks, the New Jersey Supreme Court concluded that a plaintiff can bring a CFA claim based on a course of conduct that might also be actionable under the PLA. *Sun II*, 235 A.3d at 156. The CFA and the PLA "target different wrongs, address distinct

7

types of harm, and provide for divergent remedies." *Id.* at 148. The Court reasoned that allegations of fraudulent or unconscionable business practices could support a CFA claim, whereas claims based solely on a product's "manufacturing, warning, or design defect" would be actionable only under the PLA. *Id.* at 155. Because the claims would rest on different theories of liability and would be premised on different types of conduct, the Court held that a plaintiff could maintain both causes of action in a single suit. *Id.*

The Court further clarified that "[h]ow a given claim must be pled, in turn, depends on what is at the 'heart of plaintiffs' case'—the underlying theory of liability." *Id.* at 156 (quoting *Sinclair v. Merck & Co.*, 948 A.2d 587, 596 (N.J. 2008)). The Court rejected Sun's arguments that sought to distinguish CFA and PLA claims based on the nature or source of the harm suffered. *Id.* It acknowledged language in previous decisions suggesting that the "essential nature of the claim[]" determines how a plaintiff must plead a claim. *Id.* (alteration in original) (quoting *In re Lead Paint Litig.*, 924 A.2d 484, 503 (N.J. 2007)). But it declined to endorse that standard, explaining that it was "helpful" but not the definitive "interpretative guide" to distinguishing the two claims. *Id.* The Court also noted that the nature of the damages sought does not determine a claim's proper characterization. *Id.* The result? "[A] CFA claim alleging express misrepresentations— deceptive, fraudulent, misleading, and other unconscionable commercial practices—may be brought in the same action as a PLA claim premised upon product manufacturing, warning, or design defects. In other words, the PLA will not bar a CFA claim alleging express or affirmative misrepresentations." *Id.*

## 2.     Application

Here, three of Sun's claims—regarding the suppression system's compliance with FM 5700's pressure-sensor requirement, the training Fike would provide to Sun employees, and the system's lack of failures in the field—fall squarely within the New Jersey Supreme Court's description of claims properly pled under the CFA. These claims rest only on allegations of "express or affirmative misrepresentations" rather than on any "manufacturing, warning, or design defects" with the suppression system itself. *See id.* Put differently, these claims are not premised on the allegation that something was wrong with the system; rather, the "nature of the action" is that the system did not do what Fike promised. *See id.*

Sun's two remaining claims present closer questions. First, Sun claims Fike misrepresented that the system's alarm would be audible. Sun alleges, among other things, that Fike represented that the system would comply with several industry standards that required audible alarms.[3] In another

---

[3] The District Court granted summary judgment on this claim in part because it concluded that Sun had no evidence of this alleged misrepresentation. *Sun I*, 2017 WL 6316644, at \*10. According to the Court, Sun did not assert that Fike directly represented the alarm would be audible. *Id.* at \*8. Instead, Sun claimed that Fike represented that the system would comply with industry standard National Fire Protection Association ("NFPA") 69, which governs explosion-prevention systems; NFPA 69 incorporates by reference NFPA 72, which governs fire alarms; and NFPA 72 requires an audible alarm. *Id.* The District Court concluded, however, that Fike was entitled to summary judgment because NFPA 69 did not incorporate the

9

case, this set of facts might set up a claim under the PLA—a plaintiff might, for example, plead that the lack of an audible alarm was a defect in the system's design.  But we must presume that the CFA applies to a covered activity, "even in the face of other existing sources of regulation," unless "a direct and unavoidable conflict exists" between the CFA and the other regulation. *Lemelledo v. Beneficial Mgmt. Corp.*, 696 A.2d 546, 554 (N.J. 1997).  The CFA will yield only if the other regulation "deal[s] specifically, concretely, and pervasively with the particular activity," and "the conflict [is] patent and sharp." *Id.*

There is no such conflict here.  Sun's "underlying theory of liability" as to this claim is not that the suppression system was defective. *See Sun II*, 235 A.3d at 156.  Rather, Sun asserts that Fike made a specific "affirmative misrepresentation" about a specific feature of the system—the audible alarm—and the system did not include that feature as promised. *See id.* This feature was not necessary for the product itself to fulfill its "intended purpose" under the PLA: for example, the system could have successfully suppressed the explosion but not given

---

audibility requirements in NFPA 72. *Id.* at *10.  This was incorrect.  Although the Court expressly acknowledged that NFPA 69's language was "unclear," it found "unlikely" that NFPA 69 incorporated all of NFPA 72's requirements. *Id.* at *9.  But because the language of NFPA 69 is "unclear," a reasonable jury might conclude that Fike did, in fact, misrepresent that the alarm would be audible under NFPA 72's standards. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  And because Fike's alleged misrepresentation is a material fact, summary judgment on this issue is not called for. *See id.*

an audible alarm. *See* N.J. Stat. Ann. § 2A:58C-2. In that scenario, Sun would still have a claim under the CFA (as long as it had economic damages) based on Fike's alleged misrepresentation even though the product itself was not defective. The heart of Sun's claim, then, is not that the product did not work. Rather, Sun's claim is premised on the underlying theory that Fike broke its promise. The CFA thus neither directly nor unavoidably conflicts with the PLA as applied to that claim, and the presumption in favor of preserving a CFA remedy stands. *Lemelledo*, 696 A.2d at 554.

Sun's second and final claim, however, is a different matter. Sun asserts Fike represented that the suppression system had several interrelated capabilities, including (1) suppressing or decreasing the severity of an explosion, (2) preventing an explosion from entering specific parts of the facility via connected ducts or piping, and (3) preventing "catastrophic destruction" and secondary explosions. Because the system failed to do these things, Sun claims Fike misrepresented the system's capabilities.

But this claim's "underlying theory of liability" is that the product did not work. *See Sun II*, 235 A.3d at 156. The heart of Sun's second claim is that the suppression system was not "reasonably fit, suitable[,] or safe" for its "intended purpose" of suppressing explosions and preventing destruction. N.J. Stat. Ann. § 2A:58C-2; *see also Lead Paint*, 924 A.2d at 503 (holding that plaintiffs were limited to an action under the PLA when the "focus" of the plaintiffs' claim was that lead-containing paint was not safe for its intended use in homes and businesses). Unlike with the alarm function, there is no scenario in which the suppression system could simultaneously perform its intended purpose and still fail to

11

fulfill Fike's representations on this point. The PLA thus "deal[s] specifically, concretely, and pervasively" with this "particular activity," and Sun cannot maintain a claim under the CFA for this alleged wrong. *Lemelledo*, 696 A.2d at 554.

We therefore affirm the District Court's grant of summary judgment on Sun's claim concerning misrepresentations about the capabilities of the suppression system itself. Sun cannot maintain that claim under the CFA because the core of that cause of action is products liability. We conclude, however, that the PLA does not swallow Sun's other misrepresentation claims. We thus turn to the rest of the District Court's summary judgment analysis.

## B. Evidence of Causation

Sun's remaining CFA claims are based on four alleged misrepresentations: (1) the suppression-system alarm would be audible; (2) the suppression system would comply with FM 5700's pressure-sensor requirements; (3) Fike would provide training to Sun employees; and (4) the suppression system had never experienced any failures in the field. The District Court concluded that, as a matter of law, Sun could not show that any of these alleged misrepresentations caused its harm. *Sun I*, 2017 WL 6316644, at *6–*11.

We disagree with the Court as to Fike's representations about additional training for Sun employees. To be actionable under the CFA, misrepresentations must be "material to the transaction" and "made to induce the buyer to make the purchase." *Gennari*, 691 A.2d at 366 (internal quotation marks omitted). Implicit in this standard is the requirement that the misrepresentations occur before or during the purchase

12

transaction. Here the District Court granted summary judgment on Sun's training claim because Sun purchased the suppression system from Fike in May 2012, but it requested additional training in September 2012. *Sun I*, 2017 WL 6316644, at *11. The Court thus concluded that because the complained-of misrepresentations did not occur until after Sun purchased the suppression system, the misrepresentations could not have been "material to the transaction" or made to "induce" the purchase. *Id.* However, Sun has consistently argued that Fike represented pre-sale that it would comply with industry standard NFPA 69 and that this standard requires more detailed training. Sun's expert also testified that the training provided by Fike did not comply with NFPA 69. Thus, a reasonable jury might conclude that Fike's pre-sale representations concerning NFPA 69 encompassed representations about further training. The District Court thus should not have granted summary judgment on this claim.

We also part ways with the District Court as to the other three alleged misrepresentations. Its causation analysis assumed that Sun had to prove that the misrepresentations directly caused the explosion or other immediate, related harm. *See, e.g.*, *Sun I*, 2017 WL 6316644, at *10 ("To prevail, Plaintiff would need to show that someone was appropriately monitoring the control panel, there was no audible alarm, and the lack of alarm caused Plaintiff appreciable loss."). However, the CFA's causation standard is not so stringent—it requires only that the plaintiff show ascertainable loss "as a result of" the complained-of conduct. N.J. Stat. Ann. § 56:8-19. And the complained-of conduct in a CFA case, unlike in a products-liability case, is the seller's pre-sale misrepresentations—not the malfunctioning of the product itself. *Sun II*, 235 A.3d at 155. We thus focus our causation

13

analysis on the harm flowing from the alleged misrepresentations.

Here, at a minimum, Sun has demonstrated a fact issue as to whether it would have purchased the suppression system without Fike's alleged misrepresentations. Sun initially requested a much different type of suppression system but later chose the Fike chemical-suppression system on the advice of Fike representatives. Fike and Sun also communicated extensively about the various features and benefits of the suppression system before Sun made its purchase. From this evidence, a reasonable jury could conclude that Fike's alleged misrepresentations—individually or collectively—caused Sun to purchase the chemical-suppression system. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A reasonable jury could likewise conclude that the explosion and its related harm would not have occurred if Sun had not purchased the suppression system. *See id.* Hence there is a fact issue on whether Sun suffered harm "as a result of" Fike's alleged misrepresentations, and the District Court's grant of summary judgment on that basis is reversed.

Fike makes two final arguments in support of its summary judgment motion. First, it asserts it is entitled to summary judgment because it did not actually make some of the alleged misrepresentations. But, as Fike's detailed factual arguments on this issue demonstrate, there is at least some evidence that Fike made each of the remaining complained-of representations before the sale and that those representations were false. Fike may or may not prevail at trial, but its factual arguments belong in front of a jury.

14

Second, Fike cursorily argues that the CFA does not apply to the sale of the suppression system because it is not a good or service "sold to the public at large." Fike's Br. at 53 (quoting *Cetel v. Kirwan Fin. Grp., Inc.*, 460 F.3d 494, 514 (3d Cir. 2006)); *see also* N.J. Stat. Ann. § 56:8-1(c) (defining "merchandise" under the PLA as "any objects, wares, goods, commodities, services or anything offered, directly or indirectly to the public for sale"). But the New Jersey Supreme Court explicitly rejected this narrow view of the CFA in *All the Way Towing, LLC v. Bucks County International, Inc.*, 200 A.3d 398 (N.J. 2019). In that case, the seller of specialized tow trucks argued that the trucks were not "merchandise" under the CFA because the "public at large" did not purchase the trucks. *Id.* at 408. The Court, however, held that the CFA's applicability "does not turn on whether the public at large purchases" the specific good. *Id.* Rather, the CFA applies as long as "a member of the public could, if inclined, purchase" that good "regardless of the popularity of the product." *Id.*

Here, Sun has at least some evidence that any member of the public could, if inclined, purchase Fike's explosion-suppression system. Sun points to evidence that the system was a "standard design." It also argues that Fike markets its products to "customers around the world" via a publicly available website. At a minimum, this evidence creates a fact issue on whether the suppression system is "merchandise" under the CFA, and Fike is not entitled to summary judgment on this ground.

\* \* \* \* \*

In sum, four of Sun's five CFA misrepresentation claims survive summary judgment. The PLA does not subsume those claims because they are premised on Fike's affirmative misrepresentations rather than on a deficiency in

15

the suppression system itself. Sun has also demonstrated that a fact issue exists to determine if the complained-of misrepresentations caused the harm it suffered. We therefore conclude that the District Court should not have granted summary judgment on those claims.[4]

Accordingly, we affirm in part and reverse in part the judgment of the District Court and remand this case for further proceedings consistent with this opinion.

---

[4]We note Fike's assertion that it challenged the sufficiency of Sun's pleadings in a motion to strike before it filed the current motion for summary judgment. Fike argues in passing that Sun raised new theories of liability on summary judgment that were not sufficiently pled in the complaint. The District Court, however, granted Fike's summary judgment motion on the merits and dismissed the motion to strike as moot. *Sun I*, 2017 WL 6316644, at *15. On remand, Fike may renew its pleading challenges if it so chooses and if the District Court does not grant Sun leave to amend under Federal Rule of Civil Procedure 15(a)(2).