**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-3212
_____

EDWARD SCANLON, IV,
Appellant

v.

VALERIE LAWSON; FELIX MICKENS; ROBERT BALICKI; VERONICA
SURRENCY; JOHN AND/OR JANE DOES 1-45, (fictitious individuals); ABC CORPS
1-45, (fictitious corps), jointly, and severally; WILLIAM M. BURKE, also known as
BILL BURKE; BOBBY STUBBS; DAVID FUENTES; HAROLD COOPER; WESLEY
JORDAN; CAROL WARREN
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 1:16-cv-04465)
District Judge:  Honorable Renee M. Bumb
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
March 30, 2022
_____

Before:  CHAGARES, Chief Judge, SHWARTZ, Circuit Judge, and ROSENTHAL,
District Judge[*]

(Opinion filed: May 17, 2022)
_____

OPINION[**]
_____

_____

[*]       Honorable Lee H. Rosenthal, Chief United States District Judge for the Southern
District of Texas, sitting by designation.

[**]      This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does
not constitute binding precedent.

CHAGARES, Chief Judge.

Plaintiff Edward Scanlon, IV brought this civil rights action for injuries sustained while he was held as a juvenile detainee not yet adjudicated delinquent at the Cumberland County Juvenile Detention Center ("CCJDC"). In a series of orders, the District Court granted summary judgment for the defendants, who include both CCJDC personnel and New Jersey state administrators, holding that some claims were barred by the statute of limitations while others failed on the merits. For the reasons that follow, we will affirm.

## I.

We write primarily for the parties and recite only the facts essential to our decision. While Scanlon's complaint broadly asserts that he was subjected to physical and psychological abuse throughout his detention at the CCJDC, the allegations focus primarily on a series of incidents involving defendant Wesley Jordan, who was a juvenile detention officer at the facility. Scanlon was removed from his room by Jordan and another officer on May 21, 2011. During this "room extraction," Scanlon struck Jordan and was subsequently charged with aggravated assault. Scanlon asserts, however, that Jordan used excessive force in removing Scanlon from the room.

The next incidents occurred on March 3 and 4, 2012, when Jordan allowed and possibly encouraged Scanlon to engage in fights or go "body to body" with other juvenile detainees. Scanlon was injured in these fights and sought medical treatment from defendant Carol Warren, a nurse who reported Scanlon's injuries to her supervisors. Both the CCJDC and the New Jersey Department of Children and Families ("DCF") subsequently commenced investigations. As part of these investigations, a "no contact

2

order" was issued on April 30, 2012, which prohibited interaction between Jordan and Scanlon.

Scanlon initially filed this action in New Jersey state court asserting claims under 42 U.S.C. § 1983 and the New Jersey Civil Rights Act, N.J. Stat. Ann. § 10:6–2 against defendants including CCJDC supervisors Veronica Surrency and Robert Balicki, as well as state administrators and fictitious persons.[1] The defendants removed the action to the United States District Court for the District of New Jersey, and Scanlon thereafter amended his complaint. The amended complaint added as defendants Jordan, Warren, and William Burke.[2] The District Court read the amended complaint to cover three types of conduct at the CCJDC: (1) Scanlon being subject to unlawful room extractions; (2) Jordan permitting and possibly promoting fights between Scanlon and other juveniles; and (3) a failure to provide Scanlon with proper medications. The District Court determined that in Scanlon's opposition to summary judgment he advanced additional claims not covered by the complaint, including the CCJDC's allegedly unlawful practice and procedure of placing juveniles in 24-hour administrative lockdowns and a lack of training related to treating juveniles with mental health issues. The District Court

---

[1] Scanlon also asserted claims under the New Jersey Tort Claims Act, N.J. Stat. Ann. § 59:1–1, et seq. The District Court granted summary judgment for the defendants on these claims, and Scanlon does not pursue them on appeal.

[2] The District Court granted summary judgment for defendant David Fuentes, and the parties have stipulated to his dismissal from this appeal. Scanlon similarly does not pursue his claims against Bobby Stubbs or Harold Cooper on appeal. We entered stipulations of dismissal as to defendants Felix Mickens, Valerie Lawson, and Michael Baruzza.

3

ultimately granted summary judgment for defendants Jordan, Warren, and Burke on statute of limitations grounds and for defendants Surrency and Balicki on the merits.

## II.[3]

Scanlon argues the District Court erred in concluding that the claims against Jordan, Warren, and Burke were barred by the statute of limitations. The parties agree that New Jersey law applies here and provides a two-year statute of limitations for both Scanlon's claims under 42 U.S.C. § 1983 and the New Jersey Civil Rights Act. See N.J.S.A. § 2A:14-2; Dique v. N.J. State Police, 603 F.3d 181, 185 (3d Cir. 2010). Because Scanlon was a minor when the relevant conduct occurred, his claims were tolled until he turned eighteen on April 1, 2014. See N.J. Stat. Ann. § 2A:14-21. Scanlon's claims were therefore required to be asserted by April 1, 2016. Two days before the limitations period expired, on March 29, 2016, Scanlon filed his complaint in New Jersey state court. The initial complaint did not assert claims against Jordan, Warren, and Burke but did name fictitious "John and/or Jane Does" as defendants. On October 26, 2017, Scanlon filed an amended complaint in federal court that added these individuals as defendants.

We first address the claims against Jordan. There is no dispute that these claims are untimely unless they relate back to the date that Scanlon initially filed his complaint. Federal Rule of Civil Procedure 15(c)(1)(A) provides that "[a]n amendment to a pleading

---

[3] The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1367. We have jurisdiction under 28 U.S.C. § 1291 and review the District Court's grant of summary judgment de novo. Freedom From Religion Found., Inc. v. County of Lehigh, 933 F.3d 275, 279 (3d Cir. 2019).

4

relates back to the date of the original pleading when . . . the law that provides the applicable statute of limitations allows relation back." We therefore "may apply the state law that establishes the limitations period to determine whether relation back is permissible." DeRienzo v. Harvard Indus., Inc., 357 F.3d 348, 353 (3d Cir. 2004).

Jordan was substituted for a "John Doe" defendant in the amended complaint. In substituting Jordan, Scanlon relies on New Jersey Court Rule 4:26-4 that permits the naming of a fictitious defendant with "an appropriate description sufficient for identification" until the plaintiff amends the complaint with the "defendant's true name." N.J. Ct. R. 4:26-4. Relation back under this rule requires that a plaintiff exercise due diligence in determining the true identity of a fictitious defendant both "before and after the filing of the complaint." DeRienzo, 357 F.3d at 353. What constitutes due diligence "will vary with the facts of each case," but a failure to exercise due diligence precludes reliance on the fictitious party rule. Id. at 354 (quoting O'Keefe v. Snyder, 416 A.2d 862, 873 (N.J. 1980)). At a minimum, the plaintiff has "an obligation to investigate all potentially responsible parties in a timely manner." Matynska v. Fried, 811 A.2d 456, 457 (N.J. 2002). Courts must also consider whether application of the rule would prejudice the defendant. DeRienzo, 357 F.3d at 354.

Scanlon argues that the District Court erred in determining that he did not act diligently in identifying Jordan as the officer involved in the March 2012 fighting incidents. During the DCF's investigation, Scanlon's father was told that information regarding the identity of the officer involved could not be released, and at the time the complaint was filed, Scanlon asserts that this information was still unavailable.

5

Scanlon's father further states that Scanlon could not remember the officer's name after the incidents due to memory issues.

We agree with the District Court that these actions fail to establish the required level of diligence. While Scanlon's father made early attempts to identify the officer in 2012, no further efforts were made until the complaint was filed two days before the statute of limitations expired. Plaintiff's counsel similarly filed a notice pursuant to New Jersey's Tort Claims Act dated September 18, 2012 based on the same underlying conduct in this action, but the record is devoid of actions taken by counsel to discover Jordan's identity. Prior to filing the complaint, Scanlon, his father, and his counsel failed to demand information formally, attempt to speak with other juveniles or employees at the CCJDC, file a request under the New Jersey Open Public Records Act, or search public records. We conclude that Scanlon cannot rely on New Jersey's fictitious party rule and therefore his claim against Jordan based on the March 2012 fighting incidents does not relate back.[4]

With respect to Scanlon's claim based on the May 2011 "room extraction," he argues that New Jersey's discovery rule tolls the statute of limitations. New Jersey's discovery rule "postpones the accrual of a cause of action so long as a party reasonably is unaware either that he has been injured, or that the injury is due to the fault or neglect of

---

[4] Scanlon forfeited his argument concerning the shared attorney doctrine, by failing to raise it in the District Court. See Sun Chem. Corp. v. Fike Corp., 981 F.3d 231, 235 n.1 (3d Cir. 2020). The argument, moreover, lacks merit because Jordan did not share an attorney with an earlier named defendant. See Singletary v. Pa. Dep't of Corr., 266 F.3d 186, 196 (3d Cir. 2001).

an identifiable individual or entity." Caravaggio v. D'Agostini, 765 A.2d 182, 186 (N.J. 2001) (quotation marks omitted). We have explained that this "inquiry boils down to 'whether the facts presented would alert a reasonable person, exercising ordinary diligence, that he or she was injured due to the fault of another.'" Cetel v. Kirwan Fin. Grp., Inc., 460 F.3d 494, 513 (3d Cir. 2006) (quoting Caravaggio, 765 A.2d at 186–87).

We agree with the District Court and conclude that Scanlon cannot rely on the discovery rule. Jordan's name appears on the document charging Scanlon with assault in connection with the May 2011 room extraction, and there is no claim that Scanlon did not have access to this document. Because Scanlon should have known of Jordan's involvement in the incident, this claim is barred by the statute of limitations.

We next address the claims against Burke and Warren, who similarly were added as defendants in Scanlon's amended complaint.[5] Scanlon again argues that New Jersey's discovery rule should toll the statute of limitations. We disagree. There is nothing in the record supporting that Scanlon made any inquiry into whether Burke or Warren were at fault for his injuries. While Scanlon urges that the discovery materials he received in January 2017 alerted him to Burke's and Warren's involvement, he fails to identify the documents at issue or how they shed light on these individuals' conduct. We conclude that the District Court properly granted summary judgment for Burke and Warren.

---

[5] During the relevant period, Burke was the supervisor of the New Jersey Juvenile Justice Commission's Compliance Monitoring Unit. The District Court held that the supervisory liability claims asserted against Burke also failed on the merits. We agree that summary judgment in favor of Burke was proper because there is no evidence that Burke was "involved in the day-to-day operations of the CCJDC" or had any "responsibility to enforce its policies and procedures." Burke Br. 21.

## III.

Similar to our decision in A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr., which involved § 1983 claims asserted by a juvenile detainee not yet adjudicated delinquent, "[t]here appears to be no dispute between the parties that [the plaintiff] has a liberty interest in his personal security and well-being, which is protected by the Fourteenth Amendment." 372 F.3d 572, 579 (3d Cir. 2004) (citing Youngberg v. Romeo, 457 U.S. 307, 315–19 (1982)). Scanlon here asserts § 1983 claims against Surrency and Balicki in both their official and individual capacities. Surrency was the Division Head of the CCJDC, and Balicki was the Warden of the Cumberland County Jail System, which oversees the CCJDC.

A claim asserted against a municipal government official in his or her official capacity is treated as a suit against the municipal entity itself. Id. at 580. Municipal liability may attach where a plaintiff asserts that "an unconstitutional policy or custom of the municipality led to his or her injuries, or that they were caused by a failure or inadequacy by the municipality that reflects a deliberate or conscious choice." Forrest v. Parry, 930 F.3d 93, 105 (3d Cir. 2019) (internal citations and quotation marks omitted). A claim based on a failure to train or supervise municipal employees "requires a showing that the failure amounts to deliberate indifference to the rights of persons with whom those employees will come into contact." Thomas v. Cumberland County, 749 F.3d 217, 222 (3d Cir. 2014) (quotation marks omitted) (quoting Carter v. City of Philadelphia, 181 F.3d 339, 357 (3d Cir. 1999)). A plaintiff must also establish the required casual nexus

8

between the identified deficiency in training or supervision and the alleged constitutional violation. City of Canton v. Harris, 489 U.S. 378, 391 (1989).

Scanlon first contends that summary judgment was not appropriate because the CCJDC failed to have a policy of instituting no-contact orders when a juvenile has been charged with assaulting an officer, such as the charges against Scanlon stemming from the May 2011 room extraction. Scanlon points to the fact that Burke, who is not a policymaker, testified it would be a "pretty good idea" to have such a policy and that Jordan asked Surrency whether there was a no-contact order in place for him and Scanlon. We conclude, however, that the District Court properly granted summary judgment for the defendants because Scanlon failed to establish deliberate indifference as a matter of law. There is no evidence that Surrency, Balicki, or other municipal policymakers were aware that Jordan permitted juveniles to engage in fights prior to the incidents involving Scanlon or evidence of other instances where an officer retaliated against a juvenile who had been previously charged with assaulting that officer.

Scanlon next argues that the District Court erred in granting summary judgment for the defendants because the CCJDC lacked a policy requiring medical personnel to report all injuries. Although only a few days before the March 2012 incidents Nurse Warren examined Scanlon for a "mark on his shin," there is no evidence that these bruises came from fights permitted by Jordan. Appendix 430. Because there is not a

9

casual nexus between the alleged policy deficiency and Scanlon's injuries, the District Court properly granted summary judgment on this claim.[6]

In addition to the official capacity claims, Scanlon asserts claims of supervisory liability against Surrency and Balicki in their individual capacities. A supervisor may be liable if, with deliberate indifference to the consequences, he or she "maintained a policy, practice or custom which directly caused the constitutional harm," including a failure to adopt a practice or a failure to train. Parkell v. Danberg, 833 F.3d 313, 330 (3d Cir. 2016); Barkes v. First Corr. Med., Inc., 766 F.3d 307, 316 (3d Cir. 2014), rev'd on other grounds sub nom. Taylor v. Barkes, 575 U.S. 822 (2015) (per curiam).

Scanlon reasserts his claims against Balicki and Surrency in their individual capacities regarding the CCJDC's failure to have a policy for issuing no-contact orders. These claims fail for the reasons discussed above in connection with Scanlon's official capacity claims. Scanlon's final claim asserts that Balicki and Surrency failed to provide him with proper medications while he was committed to the CCJDC. For the reasons explained by the District Court, we agree that this claim presented no viable theory of supervisory liability.

---

[6] Scanlon asserts additional claims based on the CCJDC's improper use of 24-hour lockdowns and inadequate policies for treating juveniles with mental health issues. We agree with the District Court, which declined to consider these claims because Scanlon raised them for the first time in his opposition to summary judgment. See Shanahan v. City of Chicago, 82 F.3d 776, 781 (7th Cir. 1996). While the amended complaint alleges deprivations in the "conditions of confinement," even under a broad reading of the complaint the defendants were not put on notice of the conduct described in his opposition brief. Scanlon further did not make a post-summary judgment motion to amend his complaint.

## IV.

For the foregoing reasons, we will affirm the District Court's orders granting summary judgment for the defendants.