**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0509-23

STONEFIELD INVESTMENT
FUND III, LLC, SF2 RE1, LLC,
and MAPLE ROCK, LLC,

     Plaintiffs-Appellants,

v.

L AND J ENTERPRISES 1,
LLC and LANCE SCHONER,

     Defendants-Respondents.

_____

        Argued September 10, 2024 – Decided September 24, 2024

        Before Judges Firko, Bishop-Thompson, and Augostini.

        On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Docket No. L-1807-19.

        Adam D. Greenberg argued the cause for appellants (Honig & Greenberg, LLC, attorneys; Adam D. Greenberg, on the briefs).

        Michael B. York argued the cause for respondents (Novins York Jacobus & Dooley, attorneys; Michael B. York, on the brief).

PER CURIAM

This matter returns to us a second time. In our earlier opinion, Stonefield Inv. Fund III, LLC v. L and J Enterprises 1, LLC, No. A-2882-21 (App. Div. June 27, 2023), we reversed the trial court's dismissal of plaintiffs' complaint and remanded for the court to make appropriate findings of fact and conclusions of law under Rule 1:7-4(a). We also directed the court to reconsider anew its dismissal of plaintiffs' New Jersey Consumer Fraud Act (CFA)[1] count. Id. at 19.

We also left it up to the court on remand to determine whether to re-open the record and permit additional cross-examination of Schoner. Id. at 20. The record was not re-opened on remand by the court, and the parties did not request to re-open the record. On October 2, 2023, the court placed its decision on the record, dismissed plaintiffs' complaint with prejudice, and found the CFA inapplicable. Plaintiffs now appeal from the October 2, 2023 order of dismissal issued following our remand.

Specifically, plaintiffs claim that the court erred by: (1) failing to follow our mandate and make factual findings and conclusions of law, and the factual

---

[1]  N.J.S.A. 56:8-1 to -227.

findings made were contradicted by the testimony; and (2) again concluding the CFA was inapplicable. Finally, plaintiffs urge that we assert original jurisdiction and enter judgment for plaintiffs or alternatively, remand the matter to a different judge.

We decline to exercise original jurisdiction. As to the issues presented, we affirm.

I.

The details underlying the matter under review are set forth in our prior opinion and need not be repeated here. Id. at 3-12. In its October 2, 2023 decision placed on the record following remand, the court noted plaintiffs presented only one witness, Michael Finkelstein, a licensed realtor, who would buy properties, attend auctions, manage plaintiffs' real estate portfolios, inspect the properties after title was acquired, and assess whether renovations were needed.

Plaintiffs owned "between 100 and 150 properties," and "[a]bout [twenty] properties are being rehabbed at any one time." The court stated "the total to be rented and/or sold . . . was about [fifty][-][fifty]." The court found Finkelstein used local contractors to perform the renovations based upon referrals he received from local real estate agents.

A-0509-23

The court explained that Finkelstein came to know Schoner through a local realtor back in "late 2017." The court found Finkelstein "is extremely knowledgeable in this area." The court stated the invoices submitted into evidence were unclear as to whether Schoner was working for Finkelstein or plaintiffs. According to the court, it was indeterminate whether the invoices were "actually intended as a contract, or simply as proof" of what the work would cost, and whether Schoner was a "subcontractor" for Finkelstein, who was the "general contractor" for plaintiffs. The court emphasized that Finkelstein was not individually named as a plaintiff in the case.

The court concluded that the evidence "was unclear" as to exactly who Schoner was working for. In considering a series of checks admitted into evidence by plaintiffs, the court noted there was no dispute that plaintiffs had paid money to L and J Enterprises 1, LLC. However, the court found that while Finkelstein testified defendants did not perform all of the work, and he had to "hire other people to finish the work," no estimates, documents, photographs, or other evidence was proffered to support plaintiffs' claim. On cross-examination, the court highlighted that Finkelstein "offered no documents to prove that he contracted others to complete the work and no proof of payment to those other

contractors," but would "estimate" what needed to be done by "just looking at it."

Moreover, the court stated that Schoner testified that he did the work he was paid for and "didn't leave any work undone." The court noted that Finkelstein indicated he had communicated with Schoner via text message but did not offer any of those text messages into evidence.

The court found Schoner testified there were problems on some of the jobs, such as "squatters" and stolen material, but Finkelstein "never complained, or said that he would get someone else to complete the work." The court concluded Finkelstein and Schoner were both "credible," but the court "had difficulty believing [Finkelstein] completely," based on his expertise because he "would [not] allow this to happen this way." The court determined plaintiffs did not sustain their burden of proof to prove a breach of contract.

In addition, the court found defendants did not violate the CFA. The court noted the properties being renovated were residential but were not being improved for Finkelstein's own use but instead he was working for plaintiffs. The court found Finkelstein and Schoner were "sophisticated businessmen," and plaintiffs were renovating the properties "for somebody else's use." The court characterized Finkelstein as a general contractor and Schoner as a subcontractor.

A-0509-23

In analyzing the applicability of the CFA, the court concluded defendants were doing the work for Finkelstein at his request, he "was running the show," he is an "expert," and "not the type of residential owner that the [CFA] is intended to protect" as opposed to plaintiffs contracting directly with defendants. Since the court found the "deal" was between Finkelstein and defendants and not the plaintiffs, the court held plaintiffs were not the "ultimate consumer of the goods" under the CFA. Under these circumstances, the court concluded the CFA did not apply. A memorializing order was entered dismissing the complaint with prejudice. This appeal followed.

II.

We note that factual determinations "made by the trial court sitting in a non-jury case are subject to a limited and well-established scope of review[.]" Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011) (citing In re Trust Created by Agreement Dated Dec. 20, 1961, ex. rel. Johnson, 194 N.J. 276, 284 (2008)). "[W]e [will] not disturb the factual findings and legal conclusions of the trial judge unless we are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Ibid. (quoting In re Trust, 194 N.J. at 284).

A-0509-23

The trial court's decisions on issues of law are, however, subject to plenary review. See Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)). "A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Ibid. (citations omitted).

A trial judge must obey the mandate of an appellate court. Miah v. Ahmed, 179 N.J. 511, 528 (2004), whose "instructions to the trial court on remand are binding on that court." Tomaino v. Burman, 364 N.J. Super. 224, 234 (App. Div. 2003). In fact, "the very essence of the appellate function is to direct conforming judicial action." Id. at 233.

Rule 1:7-4(a) mandates that "[t]he court shall, by an opinion or memorandum decision, either written or oral, find the facts and state its conclusions of law thereon in all actions tried without a jury." The Rule requires a trial court sitting without a jury to clearly state its factual findings and "'correlate them with the relevant legal conclusion.'" State v. Locurto, 157 N.J. 463, 470 (1999) (quoting Curtis v. Finneran, 83 N.J. 563, 570 (1980)).

Based on our review of the issues on remand, we affirm for the reasons provided by the court. The court's decision was based upon substantial credible

evidence in the record and complied with Rule 1:7-4(a).  We add only the following comments.

Plaintiffs first assert the factual findings made by the court contradicted the testimony.  In particular, plaintiffs argue that the remand court failed to consider that Schoner:  (1) testified the majority of the work was completed for 284-286 Ellison Street but did not complete the contract; (2) testified the work was completed at 110 Schooner Drive, and he was owed "$7,800.00" for this project when plaintiffs claimed defendants did no work on this property; (3) he performed the work at 106 Lawrence Drive, but plaintiffs claimed "[h]e never showed up" after making two payments of $16,666.66 and $16,666.67; (4) did not address the 1410 Kay Street property in his testimony, and plaintiffs' undisputed proofs showed Schoner was paid $4,000.00 for window replacements, and he never showed up; (5) did not address the 25 Deer Run Drive North property, but plaintiffs undisputed proofs showed a $21,666.66 payment was made but no work was done; and (6) did not address 10 Forest Edge Court, but the proofs showed he agreed to a $5,000.00 refund for uncompleted work.

However, the court specifically credited Schoner's testimony that he did the work he was paid for, and plaintiffs failed to produce any testimonial or

documentary evidence to the contrary. Saliently, the court found that the invoices plaintiffs moved into evidence did not establish a contract was entered into or were merely proof of what the work would cost. In addition, Schoner stated he did hundreds of jobs for plaintiffs previously without any issue. Finkelstein never fired Schoner and never gave him any opportunity to correct any problems. The court concluded plaintiffs failed to establish their breach of contract claim.

Failure to perform a contract in accordance with its terms constitutes a breach of contract. In order to prevail on a breach of contract claim, our Supreme Court has stated:

> [o]ur law imposes on a plaintiff the burden to prove four elements: first, that "the parties entered into a contract containing certain terms"; second, that "plaintiffs did what the contract required them to do"; third, that "defendants did not do what the contract required them to do," defined as a "breach of the contract"; and fourth, that "defendants' breach, or failure to do what the contract required, caused a loss to the plaintiffs."
>
> [Goldfarb v. Salimine, 245 N.J. 326, 338 (2021) (citing Globe Motor Co. v. Igdalev, 225 N.J. 469, 482 (2016) (alterations omitted) (quoting Model Jury Charges (Civil), 4.10A, "The Contract Claim—Generally" (approved May 1998)).]

"A contract is an agreement resulting in an obligation enforceable at law." Borough of W. Caldwell v. Borough of Caldwell, 26 N.J. 9, 24 (1958). "[T]he basic features of a contract" [are] "offer, acceptance, consideration, and performance by both parties." Shelton v. Restaurant.com, Inc., 214 N.J. 419, 439 (2013).

The Goldfarb Court explained that

> [t]he traditional remedy for breach of contract is expectation damages. See Coyle v. Englander's, 199 N.J. Super. 212, 214 (App. Div. 1985) (characterizing expectation damages, "i.e., loss of the benefit of the bargain," as the "traditional" form of damages for breach of contract). The purpose of such compensating damages "is to put the injured party in as good a position as if performance had been rendered." Totaro, Duffy, Cannova & Co., LLC v. Lane, Middleton & Co., LLC, 191 N.J. 1, 13 (2007) (ellipsis omitted) (quoting Donovan v. Bachstadt, 91 N.J. 434, 444 (1982)); see Restatement (Second) of Contracts: Purposes of Remedies, § 344(a) (Am. Law Inst. 1981) ("Judicial remedies under the rules stated in this Restatement serve to protect one or more of the following interests of a promisee: (a) his 'expectation interest,' which is his interest in having the benefit of his [or her] bargain by being put in as good a position as he [or she] would have been in had the contract been performed.").
>
> [Goldfarb, 245 N.J. at 339.]

Here, the court concluded Schoner was credible when he testified all of the work was performed, and Finkelstein never made any complaints. We defer

to the court's credibility finding.  See Seidman, 205 N.J. at 169.  Plaintiffs have the burden to prove breach of contract and show any breach caused measurable injury of damage.

We are satisfied that the court complied with Rule 1:7-4(a) and made the requisite findings on plaintiffs' breach of contract claim.  The court found there was insufficient evidence to prove a breach of contract claim.  Moreover, the court found Finkelstein's testimony "credible" but had "difficulty believing him completely."  The record supports that determination, and we find no reversible error, especially because plaintiffs presented no factual or expert testimony on the issue of damages.

III.

We also reject plaintiffs' argument that the remand court erred in dismissing the CFA claim.  The court found there was insufficient evidence to demonstrate a CFA violation.  We are persuaded plaintiffs' CFA claim was properly dismissed, albeit for somewhat different reasons than expressed by the court on remand.  First, since plaintiffs' pleading did not meet the heightened standard required to proceed with fraud-based causes of action, we affirm the dismissal order.

11

In their complaint filed against defendants, plaintiffs alleged fraud and CFA violations, stating:

### COUNT TWO
### (Fraud)

59. The above actions and omissions of all [d]efendants constitute actual fraud, thereby causing damage to [p]laintiffs.

### COUNT FOUR
### [CFA] Violations

63. The above acts and omissions of all [d]efendants constitute violations of the [CFA], thereby causing damage to [p]laintiffs.

Plaintiffs demanded the following relief in the complaint: compensatory, punitive, and where applicable, treble damages, counsel fees and costs. In their answer, defendants generally denied the allegations contained in plaintiffs' complaint and asserted failure to state a claim and failure to allege statements with specificity as affirmative defenses.

Under Rule 4:5-2, a plaintiff's claim "shall contain a statement of the facts on which the claim is based, showing that the pleader is entitled to relief, and a demand for judgment for the relief to which the pleader claims entitlement." When a plaintiff alleges fraud, a heightened standard applies to the pleading under Rule 4:5-8(a): "all allegations of misrepresentation, fraud, mistake,

breach of trust, willful default or undue influence, particulars of the wrong, with dates and items, if necessary, shall be stated insofar as practicable. Malice, intent, knowledge, and other condition of mind of a person may be alleged generally."

The elements of a common law fraud claim are: (1) a representation or omission of a material fact; (2) made with knowledge of its falsity; (3) made with the intention that the representation or omission be relied upon; (4) reasonable reliance on the representation or omission; and (5) damages. DepoLink Ct. Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 336 (App. Div. 2013).

In Hoffman v. Hampshire Labs, Inc., 405 N.J. Super. 105, 114-16 (App. Div. 2009), we affirmed the trial court's order dismissing the plaintiff's complaint for failure to state a claim under the CFA and common law fraud. In Hoffman, the plaintiff alleged the defendants' promises in a product advertisement were false, deceptive, and misleading but did not "plead sufficient facts which would establish that he . . . detrimentally relied upon [the] defendants' representations or suffered some monetary loss as a result of such reliance." Id. at 116.

A-0509-23

Here, plaintiffs did not sufficiently plead each element of common law fraud in the complaint with the specificity required under the heightened pleading standard set forth in Rule 4:5-8(a).  Plaintiffs merely allege in the "background and preliminary statement" of their complaint that defendants entered into "agreements" with them for "home improvement work to be performed on the various properties"; that defendants failed to complete the projects; they engaged in "unconscionable commercial practices, deception, false promises"; and misrepresented and omitted material facts.

Plaintiffs claim defendants failed to include cancellation language, the toll-free number, and their contractor registration number on the documents.  Plaintiffs also alleged defendants provided no written copies of guarantees or warranties, start and completion dates, and failed to obtain permits.  However, plaintiffs do not aver in the complaint that they relied to their detriment on these allegations.  Therefore, plaintiffs failed to allege or prove detrimental reliance that cause damage as required to plead common law fraud.

Second, we similarly conclude the CFA count failed to comport with Rule 4:5-8(a).  "To prevail on a CFA claim, a plaintiff must establish three elements: '(1) unlawful conduct by defendant; (2) an ascertainable loss by plaintiff; and (3) a causal relationship between the unlawful conduct and the ascertainable

A-0509-23

loss.'" Zaman v. Felton, 219 N.J. 199, 222 (2014) (quoting Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 557 (2009)). Under the CFA, an unlawful practice is defined as:

> The act, use or employment by any person of any commercial practice that is unconscionable or abusive, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged . . . .
>
> [N.J.S.A. 56:8-2.]

In Hoffman, we found that the plaintiff's allegations under the CFA were "merely statements of a legal conclusion. Plaintiff did not plead specific facts that would allow a fact-finder to draw that conclusion." Hoffman, 405 N.J. Super. at 114. Similarly, here plaintiffs assert only conclusory statements and do not plead the elements of a CFA claim, warranting dismissal under Rule 4:5-8(a). Plaintiffs' complaint lacks specificity as to what unlawful practice under the CFA is alleged. Therefore, we affirm dismissal of the CFA claim. Moreover, plaintiffs' pleaded facts did not even suggest a CFA claim. Because plaintiffs' claims lacked averment of fraudulent conduct or an unconscionable

practice by defendants that was prohibited under the CFA, dismissal of the CFA count was warranted.

Third, we are mindful that "[i]t is well established that the CFA is applicable to commercial transactions." All the Way Towing, LLC v. Bucks Cnty. Int'l, Inc., 236 N.J. 431, 443 (2019). Our Supreme Court has clarified, however, that "context is important" and that not "all business-to-business transactions automatically fit the intendment of a sale offered to the public." Ibid. "In business-to-business transactions it is the 'nature of the transaction' that will determine whether it can fit within the CFA's definition of 'merchandise.'" Id. at 447 (quoting D'Agostino v. Maldonado, 216 N.J. 168, 187 (2013)).

Our Court adopted four considerations "[t]o promote consistency in assessing the nature of a transaction in a business-to-business setting for purposes of determining whether the CFA will apply to the merchandise." Ibid. Those four considerations are:

> (1) the complexity of the transaction, taking into account any negotiation, bidding, or request for proposals process; (2) the identity and sophistication of the parties, which includes whether the parties received legal or expert assistance in the development or execution of the transaction; (3) the nature of the relationship between the parties and whether there was any relevant underlying understanding or prior

16

transactions between the parties; and . . . (4) the public availability of the subject merchandise.

[Id. at 447-48.]

Here, the court dismissed plaintiffs' CFA claim as to both defendants. The court found that the CFA did not apply here because it found Finkelstein and Schoner were "sophisticated businessmen," and the properties being renovated were residential but not improved for Finkelstein himself. Moreover, the court reasoned that it was indeterminate whether the invoices were "intended as a contract, or simply as proof" of what the work would cost. These findings support the result here.

Based upon our review of the record, we conclude the court properly reconsidered its dismissal of plaintiffs' CFA claim anew. We are satisfied the court did not err in determining the CFA did not govern the parties' relationship here.

IV.

Finally, we reject plaintiffs' request that we exercise original jurisdiction under Rule 2:10-5. Resort to original jurisdiction authority is inappropriate because no controversy remains unresolved. The court made sufficient factual findings here, which precludes our granting this extraordinary relief.

A-0509-23

To the extent not addressed, plaintiffs' remaining arguments lack sufficient merit to warrant discussion in our written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0509-23